IN RE JOHN C. WATSON.

JOHN C. WATSON, APPELLANT, v. WILLIAM HAYWARD ET AL., APPELLEES.

FILED JANUARY 23, 1909. No. 15,108.

1. Attorneys: DISBARMENT. The defendant, an attorney, dictated a form of affidavit in the presence and hearing of the witness, and which was assented to by him and taken in shorthand by a stenographer, with the understanding that the statement was to be typewritten above a signature made by the affiant on a blank sheet of paper. Upon later consultation with associate counsel and a statement to him of the facts as they had occurred, the associate not being present at the time of the dictation, it was thought the affidavit did not sufficiently detail the transaction. The associate counsel dictated additional statements, and to which a further statement was added by defendant, which was probably true, but not known so to be by the witness, together with the statement that the affidavit was made in the presence of three other persons, who were not present at the time of the dictation. The reformed affidavit was given a notary, with instructions to find the parties and procure the signature of the affiant. The notary attached his jurat and seal and handed the paper to another, with instructions to find the proposed affiant, but he was not found. The affidavit afterwards appeared with the name of the affiant erased where written by him and placed at the end of the extended instrument. The paper was originally intended for use on the hearing of an application for an interlocutory order by the district court in a cause then pending, but was never so used, nor was any attempt made to use it. Charges were presented against the defendant, by which he was accused of an effort to deceive and practice a fraud upon the court and of causing a false, forged and untruthful affidavit to be made. *Held*, That in the absence of any attempt on the part of defendant or any other person to make use of such paper, and upon a consideration of all the evidence introduced upon the hearing of the disbarment proceedings, the conduct of defendant, while not to be commended, was not such as to warrant a judgment of disbarment or suspension from practice,

2. Witnesses: PRIVILEGED COMMUNICATIONS. Upon the hearing of the disbarment proceedings, an attorney who was associated with defendant in the principal suit was called to the witness stand by the prosecution and detailed facts within his knowledge as to the conduct and statement of defendant in their consultations concerning said affidavit and its use in the principal case, and also the conversations and statements of their client upon the same subject. *Held,* That the testimony did not divulge any communications which were privileged by law.

APPEAL from the district court for Otoe county: WILLIAM H. KELLIGAR, BENJAMIN F. GOOD and LINCOLN FROST, JUDGES. *Reversed and dismissed.*

*Roscoe Pound, Frank T. Ransom, Matthew Gering* and *J. B. Strode,* for appellant.

*William Hayward, W. H. Pitzer* and *D. W. Livingston,* contra.

REESE, C. J.

An information consisting of three counts was filed against defendant in the district court, by which he was accused of unprofessional conduct as an attorney at the bar of this state. Upon a hearing before the district court, the defendant was acquitted on the first and third counts; the charges in the second count were sustained, and he was deprived of the right to practice in the courts of the second judicial district for the term of one year. From that judgment he appeals.

As there is no cross-appeal by the prosecution from the findings and judgment on the first and third counts, they need not be noticed further.

The second count is quite voluminous, too long to be here copied, and we must be content with a brief summary of what it contains. The substantial averments are: That defendant was, at the time stated an attorney and counselor, duly licensed to practice at the bar of the courts of the county and district; that he was employed by one

In re Watson.

Minitree E. Catron to aid in the defense of a suit pending against him in the district court, and in which suit one Charles D. Butterfield was plaintiff; that in the management of said defense he obtained from one A. G. Graham an oral statement of facts, then dictated by defendant to a stenographer in his employ, the said statement being taken in short hand; that he induced said Graham to sign his name on a blank sheet of paper in order that the stenographic statement might be typewritten above the signature; that at the time of procuring said signature it was not the intention of defendant to have written above the said signature the statement dictated, but that his purpose and intention was to have written a false statement not agreed to by said Graham; that he did cause to be written upon said blank sheet of paper another, untruthful and material statement, reciting that it was made in the presence of persons not present; that the false statement was of too great length to be written above the signature so made, and he caused the signature to be erased and the name of Graham written and forged at the end of the false statement; that he wrongfully and fraudulently caused the said stenographer, who was a notary public in defendant's office, to affix a false and untruthful jurat, with his seal appended, certifying that said statement was subscribed and sworn to before him, the said defendant well knowing that said statement and jurat were false and that Graham's signature was forged, and also well knowing that neither of the persons referred to as having been present were at the place where and time when the statement was in fact made by said Graham; that the purpose and intent of defendant in causing and procuring said false statements to be written and certified to by the notary was to deceive and impose upon the court where the suit to which the statement referred was pending; that he did not expect the said Graham would be present in court when said cause was heard, thereby giving him an opportunity to practice the deception intended; that he sought to procure one L. F. Jackson to testify falsely, upon the

hearing of said cause, to the effect that the false statement was signed and sworn to by said Graham in his presence, and in all of said matters the said defendant did not abstain from offensive practices as such attorney, but performed the acts alleged and consented to the acts of others, as alleged, with intent to deceive the court and procure an unfair advantage for the said Catron over the said Butterfield.

Copies of the statement agreed to by Graham as dictated, and of the purported affidavit, as prepared in the absence of Graham, are attached to the information as exhibits, but it is not deemed essential that they be set out here. It must be sufficient to say that the purported affidavit with the jurat and seal attached were of a character and contained statements which might become material upon the hearing of the question then pending and awaiting a trial in court. There was no special finding made as to any of the facts, but it clearly appears that neither of the statements were offered in evidence upon the hearing, and that no effort was made to introduce or use them. In so far as they are concerned, the misconduct was limited to their preparation. Evidence was introduced tending to show that the first statement was dictated in the presence of Mr. Graham, and to which he assented, and which was, no doubt, truthful, as it tended to show that an alleged altercation between Catron and Butterfield in a room adjoining the front room of defendant's office was not heard by Graham; the apparent object being to show that defendant was not aware that any difficulty between the parties occurred in a room which constituted a part of his office. The second statement, in the form of an affidavit, and which included the contents of the first, was much more extended, a portion of which was dictated by Mr. E. F. Warren, co-counsel with defendant in the suit; the dictation being made from the statements of defendant to Mr. Warren. It was claimed that this statement embodied the facts, in the main, which were not stated in the first, and which it was intended should also contain statements of

facts which were to be presented later, and that, when completed, was to be signed and sworn to. The paper, it was claimed, was given the notary, who was to find Graham and administer the oath; that the notary appended his jurat and official seal, but failed to find Graham, and returned the paper to defendant's office. There are other facts from which the inference is drawn by the prosecution tending to prove guilty knowledge and a fraudulent and unlawful purpose and intent on the part of defendant. There are some features of the case which tend more or less strongly to support this contention. If it be conceded that such is the fact, and taking the evidence and inferences to be drawn therefrom in their most criminating light, we yet fail to see how that unexecuted purpose, there being no attempt to make use of the papers upon the hearing, would or could justify the disbarment of defendant. That such conduct, if established would show a depraved conscience and would be highly reprehensible, no one can doubt; but, if there were no overt act the tendency of which could or would deceive the court or practice any fraud upon the opposite party in interest, we cannot see that it would call for any disciplinary action on the part of the court. In view of the contradictory evidence and the explanation of his conduct by defendant, we are forced to this conclusion. Had he made an attempt to mislead or deceive the court by the production and presentation of a spurious affidavit, even though he might not have been successful, a different question would have been presented. We have been cited to no case which holds that the acts of defendant, even if viewed as contended for by the prosecution, would call for the disbarment of an attorney. It is argued, in substance, that the loose and probably criminal conduct of the notary, with the knowledge and consent of the defendant, should call for the denunciation of the court and an affirmance of the decision. It appears that it was the practice of the notary to attach his certificate and seal to papers previous to the signing by the affiant and administration of the oath to him. That

such practice by a notary is highly culpable cannot be questioned. It should be and is denounced by all authority, honesty and reason. Yet a paper, when completed by this method, might not be invalid. The action of the notary might be a crime, and yet not call for punishment to fall upon his employer. But, treating the whole transaction as the act of defendant, accompanied by no attempt to make use of such paper in any way that could result in deceiving the court or in a miscarriage of justice, we cannot see where or how the drastic punishment of disbarment should be administered. In *In re Haymond*, 121 Cal. 385, the accused, an attorney, was informed against for offering to sell to a newspaper the confession of a party who was on trial for the crime of murder, and while the trial was in progress, it was held as not sufficient ground for disbarment; the negotiations being discontinued without the publication having been made.

We fully recognize and adopt the rule quoted from the great number of decisions cited in the very able and exhaustive brief of counsel for the prosecution, yet we are unable to see that they can be applied to this case as shown by the evidence. That there might be ground for suspicion that the course pursued by an attorney was intentionally unprofessional, or even criminal, would not alone be sufficient to call for his disbarment. A proceeding to disbar is not a criminal prosecution, nor governed by the rules of evidence in such cases, yet it partakes somewhat of that nature, and the rule seems to be well settled that the evidence must be clear and convincing in order to warrant a judgment of disbarment. 4 Cyc. 915. Upon a consideration of all the evidence, we are not convinced that there is that "clear preponderance" of the evidence which is required.

An attorney who was employed with defendant in the defense of the suit of *Butterfield v. Catron* was called as a witness for the prosecution and gave evidence as to certain transactions and conversations with defendant and their client, Catron, concerning the existence of, and use

to which it was at one time proposed to make of, the affidavit referred to. It is insisted by the defense that the attorney violated his obligation of secrecy as to such communications and that the receipt of his testimony was error. We are satisfied that neither position can be maintained. It was the theory of the prosecution that the action and conduct of defendant indicated a purpose of perpetrating a conscious, intentional fraud upon the court, and that the testimony of the attorney who knew the facts was essential to their establishment. If he believed such was the purpose, it was not only proper, but his duty, to expose and make known what had been done. The record shows that he hesitated and practically declined to speak until urged to do so by the judge of the court. The facts testified to by him did not expose the secrets of his client, such as were necessary to the management of the case. There was no privileged communication detailed by him in his testimony. See Weeks, Attorneys at Law (2d ed.), sec. 170; Reynolds' Stephen, Evidence, art. 115.

As we have seen, the information charged defendant with soliciting a witness to testify falsely upon a material matter then in issue and to be heard by the court. We find no evidence sufficient to sustain this charge, nor is it insisted upon in the briefs.

It follows that the finding and judgment of the district court will have to be reversed and the prosecution dismissed, which is done.

REVERSED AND DISMISSED.

FAWCETT and ROOT, JJ., not sitting.