STATE OF NEBRASKA, PLAINTIFF, V. ALLEN G. FISHER, DEFENDANT.*

FILED OCTOBER 8, 1908. No. 15,152.

1. Evidence examined, and found sufficient to sustain the findings against respondent.

2. Attorneys: UNPROFESSIONAL CONDUCT. Where an attorney in presenting a claim against the state to the legislature knowingly supports the same by a false, forged and fraudulent appraisement as evidence of its validity and of the amount he is entitled to recover thereon, he is guilty of gross, unprofessional conduct, and a breach of sound professional ethics, and should receive suitable punishment therefor.

3. Costs: DISBARMENT PROCEEDINGS. In the absence of any statute providing for the taxation of costs in proceedings for disbarment, it is proper for the court to require each party to pay his own costs.

PROCEEDINGS in disbarment. *Respondent disbarred.*

*William T. Thompson, Attorney General,* and *W. B. Rose,* for the state.

*Halleck F. Rose* and *Charles A. Robbins, contra.*

BARNES, C. J.

This is a proceeding to disbar the respondent, Allen G. Fisher, who is an attorney at law, duly licensed to practice his profession in all of the courts of this state. It was instituted by the attorney general in response to a resolution of the house of representatives of the legislative assembly of 1907.

*Rehearing denied. See opinion, p. 367, *post.*

It appears that some time prior to the year 1901 one Herman Goedde, a subject of the kingdom of Prussia, departed this life in Sioux county, Nebraska, seized of a section of land situated in said county; that he left him surviving as his heirs certain brothers and sisters residing in his native country; that the respondent was professionally employed by them to look after their interests in their deceased brother's estate; that he entered into a contract by which he was to procure for them the sum of $1,000, and was to have and reserve to himself whatever he might secure therefor or therefrom over and above that amount. Acting under the belief that the land in question would escheat to the state, the respondent procured the county attorney of Sioux county to prosecute an action in the district court to that end, and in which respondent appeared as attorney for said heirs, and admitted the facts alleged in their petition; and, further, by way of an admission stated that the land in question was worth the sum of $8,000. A decree was thus obtained declaring said lands escheated to the state. It appears, however, that the value of the land was not fixed by the decree, but an appraisal thereof was ordered, which was had accordingly, and its value was fixed by said appraisement at $1,500.

Taking the proceedings above described as a basis therefor, the respondent filed with the auditor of public accounts, and presented to the legislative assembly of 1901, a claim for payment for said land, in which he alleged that its value was $8,000, and as proof thereof referred to said decree and a copy of the appraisement, which respondent stated was attached to and made a part of his claim. No copy of the appraisement was in fact attached to the claim, and for that reason it was disallowed and rejected. It further appears that, after the appraisement was made, its amount was fraudulently changed and altered from $1,500 to $11,500; that respondent again presented the claim to the legislative assembly of 1903, and attached thereto a copy of said changed,

fraudulent and altered appraisement, and said claim was again rejected and disallowed. It also appears that the respondent again presented his claim to the legislature of 1905, together with said fraudulent, false and altered appraisement, and pressed the same for allowance, and for a third time it was disallowed and rejected. The matter remained in that condition until the meeting of the legislature of 1907, when certain other persons, claiming to act for the Goedde heirs, presented a claim to that body for compensation for said land on the supposition that it was escheated to the state. The respondent was thereupon called before the claims committee of the house, and disclosed the fact that he had recently purchased the land in question from his clients for the sum of $1,000, less a commission of $50, and was then the owner thereof. His disclosures resulted in the resolution above mentioned.

On the 16th day of April, 1907, the attorney general filed the information contained in the record herein, which which need not be set forth, and to which the respondent filed his answer, denying the charges therein contained. Thereupon the matter was referred to a committee of attorneys of this court, consisting of Honorable Charles H. Sloan of Fillmore county; Honorable Walter L. Anderson of Lancaster county, and Honorable H. P. Leavitt of Douglas county, who are also members of the state bar commission, with directions to hear the testimony, and to find and report their conclusions of fact and law. In obedience to this order, the committee has taken the testimony and filed its report. We do not deem it necessary or expedient to set forth the report in full in this opinion, and it is sufficient to say that, so far as it was adverse to respondent, it set forth that by the aid and connivance of the county attorney of Sioux county respondent procured the decree above mentioned; that the land in question was appraised and valued at $1,500; that some one unknown to the committee fraudulently changed and altered the same after it was filed in the office of the clerk

of the district court for said county by inserting a figure
"1" before the figure "5" therein, thus making it appear
that the value of the land was $11,500, instead of $1,500,
the true amount at which it was appraised; that respond-
ent verified and filed a claim against the state for the sum
of $8,000, which he presented to the legislative assembly
of 1901, and attempted to procure the allowance and pay-
ment of the same; that he again presented said claim to
the legislative assembly of 1903, and after having in-
creased the amount thereof from $8,000 to $11,500 pre-
sented a copy of said false, fraudulent, forged and al-
tered appraisement in support thereof; that he presented
said claim to the legislative assembly of 1905, and at that
time he knew or was charged with knowledge of the false,
fraudulent and altered condition of the appraisement, and
used a copy thereof as evidence and proof of the value of
said lands; that he thus attempted to wrong, cheat and
defraud the state to his advantage. The respondent has
filed his exceptions to said report, and a motion for judg-
ment in his favor dismissing the proceedings; and the at-
torney general has also filed a motion for a judgment
disbarring respondent, and the case has been argued and
submitted on the record and the motions above men-
tioned.

That the procedure adopted in this case is the proper
one there can be no doubt, for that matter was fully and
finally settled by our decision in *State v. Burr*, 19 Neb.
593, and so the first question to be determined is the one
raised by respondent's exceptions to the report of the com-
mittee. Upon this branch of the case, we can say that we
have carefully read all of the evidence, and find that it
fully and amply sustains the findings of the committee,
and defendant's exceptions are therefore overruled.

We come now to consider respondent's motion to dis-
miss this proceeding nothwithstanding the findings. It
is strenuously contended that the facts found by the com-
mittee, as above stated, do not constitute the offense or
any part of it charged in the information, and are not

sufficient to sustain a judgment of disbarment against the respondent. From an examination of the many authorities cited on both sides of this controversy, we are impressed with the thought that, in proceedings for disbarment on account of unprofessional conduct, the findings and judgment, as well as the degree of punishment inflicted by the court therefor, have depended largely on the individual temperament, beliefs and feelings of the judges before whom such proceedings have been conducted, and so no hard and fast rule for the determination of cases like the one at bar can be invoked. In *State v. Finley,* 30 Fla. 325, 18 L. R. A. 401, the respondent was found to have inserted in a decree, after it was signed by the chancellor, certain immaterial words, and the court, among other things, said in that case: "We do not wish it to be understood that we are inclined to condone, palliate, countenance or excuse any manner of tampering with the decree of a court after it obtains the sanction of the judge's signature, even to the crossing of a T or dotting of an I therein; on the contrary, we think that such a practice is highly reprehensible, and deserves severe punishment, no matter how innocent or immaterial the alteration or change may be." But it was held in that case that disbarment was too severe a sentence, and that a reprimand or suspension for a time was a more suitable punishment.

Now, in the case at bar, the respondent was acquitted of changing or altering the appraisement, and it is quite probable that he did not know of its alteration until after he presented his claim to the legislature at its session of 1903. But it appears that during that year his attention was directed to the matter, and he must have known that fact when he again presented the claim in 1905. There is no escape from this conclusion, and so when he used the fraudulent appraisement to support his claim, after having knowledge of its condition, he was guilty of gross, unprofessional conduct, and a breach of sound professional ethics. His conduct having been brought to our

attention by this proceeding, we are not at liberty to overlook or condone it. Such conduct in an officer of this court not only merits, but actually requires, discipline therefor. The committee has by its report recommended leniency in this case, and, in view of all the circumstances disclosed by the record, we are disposed to adopt the recommendation. The respondent is a man past middle life, with a family dependent upon him for support and education, and, so far as we are advised, has no other means than his professional earnings by which he can maintain and educate them. The end to be attained in proceedings of this nature is protection to the public and to the good name of the profession, and not severe punishment. Respondent's expulsion from the bar will blast all his hopes of prosperity to come, mar the fruits expected by him from the training of a lifetime, and deprive his family of their maintenance and education. We are, therefore, of opinion that the punishment of removal from office would be unreasonably severe in this case; that suspension more nearly accords with the offense of which respondent has been convicted. His motion is therefore overruled; the motion of the state is sustained in part, and to the extent only that the report of the committee is adopted, and its findings are hereby approved; and it is further ordered that respondent be, and he is, hereby suspended from the practice of his profession of attorney and counselor at law in this and the district courts of this state for the period of one year; but, in order to protect the interests of his clients, the suspension shall not take effect until January 1, 1909.

The state has also asked that all of the costs of this proceeding be taxed against the respondent. In determining that matter, we find that in *Morton v. Watson,* 60 Neb. 672, it was held: "In disbarment proceedings costs cannot be taxed against the informers, at least where the informers acted in good faith in bringing the alleged misconduct of the attorney to the attention of the court." The ruling there announced was based on the proposition

that at law costs are mere creatures of the statute, and as there is no statute specifically providing for the taxation of costs in proceedings of this nature, and as the awarding of costs depends thereon, we are of opinion that we should overrule the application of the attorney general, and such ruling will accord with the great weight of authority on this question. We deem it proper, however, in this case to require each party to pay his own costs, and it is so ordered; and judgment will be entered herein in accordance with this opinion.

JUDGMENT ACCORDINGLY.

The following opinion on motion for rehearing was filed January 9, 1909. *Rehearing denied:*

FAWCETT, J.

In the opinion by BARNES, C. J., in this case, it is said: "It further appears that, after the appraisement was made, its amount was fraudulently changed and altered from $1,500 to $11,500; that respondent again presented the claim to the legislative assembly of 1903, and attached thereto a copy of said changed, fraudulent and altered appraisement, and said claim was again rejected and disallowed. It also appears that the respondent again presented his claim to the legislature of 1905, *together with said fraudulent, false and altered appraisement,* and pressed the same for allowance, and for a third time it was disallowed and rejected." Respondent's application for rehearing is based almost entirely upon the words quoted from the opinion of BARNES, C. J., which we have italicized. Respondent says that "the commission did not find that defendant, in presenting a claim to the legislature in 1905, 'knowingly supported it with a false, forged and fraudulent appraisement as evidence of its value.'" Respondent's argument is to the effect that the commission did not make any such finding, and that there was no evidence in the record to that effect. Tech-

nically speaking, respondent is right in this contention. The commissioners did not find that the fraudulent appraisement was attached to the claim when it was presented to the legislature of 1905; but it appears from the record that between the sessions of 1903 and 1905 the appraisement had disappeared. The statement by the chief justice that respondent presented the fraudulent appraisement with his claim in 1903 is supported both by the evidence and the findings of the commission. If we eliminate the italicized words above referred to, so as to make the opinion of the chief justice read: "It also appears that the respondent again presented his claim to the legislature of 1905, and pressed the same for allowance, and for a third time it was disallowed and rejected," the opinion would be literally correct. The criticism of the opinion as written, however, is technical, and not real. If he presented his claim to the legislature of 1903 with the fraudulent appraisement attached, and pressed the claim for allowance, he was guilty of everything charged against him; and, if he then presented the same claim to the legislature of 1905, he would be guilty of a repetition of the offense of 1903, even though the fraudulent appraisement had been abstracted in the meantime. If the chief justice cares to correct his opinion by striking out the italicized words, all right; although we do not see any necessity for so doing.

In his typewritten brief, filed December 15, 1905, calling attention to the bunch of papers marked "Showing in support of petition for rehearing," respondent says: "This claim was not supported by any certified copy or any appraisal in 1903. In proof of this, defendant asks an examination of the report and opinions of Attorney General Prout, 1903, 1904, wherein, at page 35, is said relative to this claim then before the committee: 'The transcript at the present time is in the same condition it then (1901) was, except that a new voucher has been attached, which is filed simply as an amendment and supplement to the proof on said original claim No. 55,846. On the back of

which voucher is a typewritten statement, purporting to
show an appraisement of these lands by the county judge,
county clerk and county treasurer of Sioux county at
$11,500, which purports to have been sworn to October 10,
1900. To this appraisement there is no valid authentica-
tion, the purported certificate of the district court being
signed by a typewriter, and not authenticated by the seal
of the court.' Here, then, is an official report by the
legal department of the state that no appraisal was then
presented to the committee, which had asked this informa-
tion, upon the actual papers by the defendant in 1903."
In other words, respondent insists that no appraisal was
attached to his amended claim in 1903, because the pur-
ported certificate of the district court was signed by a
typewriter, and not authenticated by the seal of the court.
In his testimony, however, given before the legislative
committee, attached to his "showing in support of petition
for rehearing," we have the following: By Mr. Casebeer:
"Q. You may state, if you know, the amount of the ap-
praisement of this land? A. The amount that is contained
in the original appraisement? Q. There is only (one)
appraisement, as I understand it. A. You asked about an
affidavit. Q. But you failed to answer directly. What I
wanted to know was what was that land appraised at?
A. If you will let me look at the second claim, I will tell
you. Q. Is that what you mean (showing witness a
paper)? A. Yes; on the 31st of January, 1903, I prepared,
and on the 3d of February, 1903, I filed, an amended
claim, *and that has written on the back of it a certified
copy of the appraisal.* Q. Will you state to this com-
mittee why there is a difference of $10,000 between the
affidavit that is furnished this committee by the clerk of
the district court and this claim that is filed by you? A.
The difference is because the clerk made this affidavit, sir.
That is all the difference. The original paper on file says
$11,500 in the clerk's office. Q. In your amended voucher
you swear that the appraised valuation of the land in

27

evidence was $11,500. On what facts do you base such a statement? A. Let me see the paper, and I will see whether I swore to that or not (handing witness a paper). I do not know whether I swore that that was correct or not. It don't make any difference, the basis for it is this copy on the back of there, *which is a true copy of the certified copy of that appraisal which was in my office at the time.* Q. If this is a certified copy of it, then why did you, four years ago, file this as a true copy? This is, as I understand, the original claim filed by yourself? A. Yes; before the legislature of 1901, marked claim No. 203. At the time I got the transcript I did not know that any appraisal had been made, or I certainly would have attached it, and the claim would have been for $11,500 instead of $8,000. Q. Then you base the claim of $11,500, do you, upon the fact that you did not know what the appraisement was? A. No, sir. Q. Then will you state why? A. Why, I base the claim for $11,500 *that I swore to* there on the fact *that I knew that the appraisement was $11,500 and had a certified copy in my possession in February, 1903.* In February, 1901, I filed for $8,000. · I did not know that it was for $11,500, or I would have filed for $11,500." It will be seen from the above testimony that his statement in his typewritten brief that the claim was not supported by any certified copy or any appraisal in 1903 is puerile. So far as his offense is concerned, it matters not that that appraisement was not properly authenticated, when he states in his own examination that, when he swore to the claim for $11,500, he based his statement on the fact that he knew the appraisement was for $11,500, "and had a certified copy in my possession in February, 1903."

The motion for rehearing is without merit, and should be

OVERRULED.