STATE OF NEBRASKA, COMPLAINANT, v. ALLEN G. FISHER, RESPONDENT.

FILED SEPTEMBER 27, 1919.   No. 20562.

1. Attorneys at Law: DISBARMENT: COMPLAINT. If reliable information is brought to this court that any member of the bar of this state has been guilty of misconduct requiring disbarment, the court will require formal charges to be filed and trial had thereon.

However, when the information is brought to this court by the sworn statement of a citizen sufficiently formulating the charges against a member of the bar, and the member so charged makes formal answer to the information, no other proceedings are necessary to present the issues for determination.

2. ———: ———: TRIAL: EVIDENCE. In trial of disbarment, the ordinary rules of evidence obtain. If the defendant objects to evidence on the ground that it is "incompetent, irrelevant and immaterial, not tending to support any issue in this case," and afterwards withdraws his objection, he cannot afterwards complain that the evidence was incompetent because of formal defects.

3. ———: ———: FORGERY. The lawyer who knowingly uses forgery of another to impose upon a court cannot justify or lessen his violation of duty as a member of the bar by showing that he did not himself commit the forgery.

4. ———: SUSPENSION: PRACTICING PROFESSION. To draw pleadings and prepare a case for trial in the district court is practicing the legal profession in that court whether he signs his own name or the name of some other attorney, and is a violation of duty by an attorney who has been suspended from practicing his profession in that court.

5. ———: DISBARMENT: DEFENSE. A prosecution for contempt is entirely distinct from a prosecution for disbarment, and they will not be tried together; but the fact that a member of the bar has made himself liable to a criminal prosecution, and has not been prosecuted, or has not been convicted, may not be a complete defense to a complaint for disbarment for the same act.

6. ———: ———: UNLAWFUL CONSPIRACY BY CLIENTS: DUTY OF ATTORNEY. If a member of the bar is aware of conspiracy of his client and others to obstruct justice and accomplish unlawful purposes in litigation in which he is employed as attorney, he should prevent such practices, if possible, and, if not, should either expose such conspiracy or, at least, withdraw from the employment.

7. ———: ———: UNLAWFUL CONSPIRACY. If the conspirators continually consult with him as to their plans and purposes, and he criticises the same only on the ground of impracticability, and tacitly approves of obtaining, if possible, the desired results by the means employed, he will, in proceedings to disbar him, be considered as one of the conspirators.

8. ———: ———: EVIDENCE. Although a specific charge of misconduct of an attorney may not be supported by sufficient evidence

103 Neb.—47.

to require disbarment, still, if it shows a disposition to unprofessional conduct, it should be considered in connection with the facts established upon other charges in the same complaint for disbarment.

9. ———: ———: LIMITATIONS. When the misconduct of an attorney has been practically continuous, and there is no evidence of reformation or change of conduct, disbarment will not be barred by lapse of time as to any of such misconduct.

Original proceeding by the state to disbar respondent from the practice of law. *Disbarred.*

*Fawcett, Mockett & Walford* and *E. D. Crites,* for complainant.

*J. B. Barnes* and *Strode & Beghtol, contra.*

SEDGWICK, J.

Disbarment proceedings were begun against the defendant by filing in this court a complaint with seven separate counts with specifications. The defendant answered, and the court appointed Honorable Frank A. Barton referee to take the evidence and report to the court his findings of fact and conclusions of law. The matter appears to have been very earnestly contested before the referee. A very large amount of evidence was taken by the state, and the referee has found that the first four alleged grounds for disbarment stated in the information are established by the evidence, and his conclusion is that the defendant is guilty as charged, and that he ought to be disbarred. The referee found that the three remaining charges of the information are not established by the evidence. A motion was made to confirm the report of the referee as to the first four counts and for order of disbarment thereon, and that the findings of the referee as to the fifth and sixth charges of the information be reversed, and the court find from the evidence that the defendant is guilty as therein charged. It is conceded that the seventh charge of the information is not supported by the evidence.

It was objected that the information should be dismissed, because it is presented by a private person, and

not by the authority of the court or of the state. It is the duty of any citizen who has knowledge of the fact to inform this court when any member of the bar has been guilty of such conduct as to require his disbarment. Perhaps regularly upon such information the court would order the attorney general or some member or committee of the bar to investigate the matter and formulate charges. However, when the information is brought to this court by the sworn statement of a citizen formulating the charges against a member of the bar, as in this case, and the member so charged makes formal answer to the information, no other proceedings are necessary to present the issues for determination.

The first count of the information charges that the defendant in February, 1907, was guilty of forgery in an action pending in the district court for Dawes county, in which he was employed as attorney, and that he offered the forged document in evidence, and that, to procure the admission of the document in evidence, he falsely testified in that trial that the document as offered by him was executed in his presence by the parties by whom it purported to be executed. The record, including the evidence taken in the trial of the case referred to, was offered and received in evidence before the referee. As this defendant was not a party to that action, it is objected that this record and evidence was incompetent and should not have been received. This objection would have been available as to a large part of this record, at least, if it had been made at the time it was offered and had been insisted upon. On the contrary, it was stipulated between the parties that the files offered were the original files in the case referred to, "and that said files were produced by the proper authority, foundations of proof being waived." The defendant made several objections to the evidence, as that the charge was too stale, and that the charge was not ground for disbarment, and was barred by the statute of limitations, and was false in substance. When

the pleadings, proceedings, and decree in the cause were offered, the defendant objected on the ground that it was "incompetent, irrelevant and immaterial, not tending to support any issue in this case." But afterwards the record shows: "Objection is withdrawn and said exhibits numbered 1 to 1-L are here received in evidence." The defendant, by withdrawing this objection to the evidence, made the production of oral testimony unnecessary, and cannot now be heard to object to the competency of the evidence.

It is also objected that the evidence, even if the record is considered, is not sufficient to support the finding and conclusion of the referee.

"The lawyer's life must be one of fidelity and stern integrity." *In re Sitton*, 177 Pac. (Okla.) 555.

"In granting a license to practice law it is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner, and abstain from such practices as cannot fail to bring discredit upon himself, the profession, and the courts. If a deceit is practiced by an attorney in his character as such, although not in a suit pending in the court, he may be removed from his office as attorney." *State v. Burr*, 19 Neb. 593. 2 R. C. L. 1099, sec. 192; 6 C. J. 598, sec. 58.

The facts established by the uncontradicted evidence, with admissions of defendant, in this record, prove that the defendant knew, or at least as the responsible attorney in the case should have known, that the document he offered in evidence had never been agreed to by the party against whom it was offered. If defendant was not guilty of forgery himself, he sought to deceive the court by the forgery of others. One who attempts to benefit by the use of forged commercial paper is as guilty of felony as the forger himself. And so, the lawyer who knowingly uses forgery of another to impose upon a court cannot justify or lessen his violation of duty as a member of the bar by showing that he did

not himself commit the forgery. This evidence is an important part of the whole evidence showing the character of the defendant's professional conduct during a series of years.

Proceedings for disbarment of this defendant were heard before this court in 1908, and resulted in his suspension from practice as an attorney for the year commencing Feb. 1, 1909. *State v. Fisher,* 82 Neb. 361. The second count of the information that we are now considering charged that the defendant, in violation of the order of this court in the former proceedings, continued in the practice of law during the whole year in question. The order of this court was: "It is therefore considered, ordered and adjudged that the defendant Allen G. Fisher be, and he is hereby, suspended from the practice of his profession of attorney and counselor at law in this and the district courts of this state for the period of one year; but, in order to protect the interests of his clients the suspension shall not take effect until January 1, 1909." The defendant was employed as an attorney in litigation then pending, and he attempted with another member of the bar to conduct the litigation in the courts, not only in those cases then pending, but also in such new cases as might be offered to defendant. It is contended that the defendant did not at any time orally participate in the trial of cases in open court, either in the state supreme or district courts, and that the order of the court did not deprive him of the right to do any other act or thing that he was authorized to do by his membership of the bar of the state. If it should be considered that the order did not suspend all of the powers given him by his membership of the bar, he was forbidden to "practice his profession" in the courts named. What is it to practice the legal profession in the courts? In *In re Lizotte,* 32 R. I. 386, 35 L. R. A. n. s. 794, it is held: "An attorney who has been suspended from the practice of his profession is guilty of contempt of court if he retains

upon his office door and stationery the statement that he is an attorney, and consults with clients, makes collections, and does other legal work the same as before his suspension, except so far as it requires his appearance in. court proceedings, although in so doing he acts upon advice of counsel." The opinion recites the acts complained of, which are substantially the same as this defendant has done. The court said: "Members of the bar who are under suspension will be required to comply with the terms of the decree suspending them in such a manner that there may be no ground for suspicion on the part of other members of the bar or of the public that the decrees of this court are not being exactly observed in their letter and their spirit."

The defendant here not only prepared and filed in the district court pleadings and other papers with the name of another attorney attached, but in some instances with his own name also attached as attorney. He maintained a law office as before his suspension, which carried a sign naming him as an attorney at law. He consulted with clients continually in regard to their actions pending in this and the district court, and was present in court when their cases were tried. In some cases he attempted in open court to make suggestions in regard to one of his cases being tried, and was rebuked by the court. These things and other matters that are proved without contradiction constitute practicing "his profession as attorney and counselor at law." To draw pleadings and prepare a case for trial in the district court is practicing his profession in that court, whether he signs his own name or the name of some other attorney. During the time he was so violating the order of the court, the court so construed that order and notified him of that fact. The evidence shows that he forwarded some papers to the clerk of this court for docketing here, and that the court, after learning the facts, instructed the clerk to inform this defendant that "a package containing records" in certain cases had

been received by the clerk with the defendant's check "in payment of filing fee in these cases," and "the judges have given this office positive instruction to file no papers in this court received from you, even though the name of some other person is attached thereto as attorney. * * * They have also requested that we return your letter of July 6, together with your check for $20. * * * It has been suggested that it would be well for you to strictly obey the order of the court, and not try to avoid same by signing other attorney's names to papers filed herein; otherwise, your action might prove disastrous both to yourself and the attorney whose name you attach to the papers." This official construction of the order and notification of the same appears to have had no effect upon the defendant. He continued in his conduct as before.

It is said that, if such conduct amounted to contempt of court, the remedy was to punish for contempt, and that disbarment cannot be coupled with prosecution for contempt. It is true that the evidence appears to establish that the defendant was by that practice guilty of contempt of court, and that he might have been prosecuted for such contempt, and also that a prosecution for contempt is entirely distinct from a prosecution for disbarment, and that the two cannot be joined, at least are not usually joined, in one complaint. But the fact that a member of the bar has made himself liable to a criminal prosecution, and has not been prosecuted and convicted, is not an answer to a complaint for disbarment for the same act. Such complaint for disbarment may be made either before or after a prosecution, whether the prosecution is successful or unsuccessful. 2 R. C. L. 1101, sec. 194.

The third count alleges that the defendant was employed by one Hood to obtain a divorce, and that Edwin D. Crites, an attorney of the same county, was employed by Mrs. Hood, and that defendant conspired with certain private detectives and with enemies of Crites to

"cause the said Edwin D. Crites and the said Mrs. Robert Hood, in said county and state, to be falsely charged with material (marital) misdemeanors, indiscretions and scandals, with each other, prejudicial to the honor and reputation of the said Edwin D. Crites, as such attorney, and the said Mrs. Robert Hood, and did so conspire, confederate, advise and agree that. the said Edwin D. Crites and the said Mrs. Robert Hood should in some manner be caused to be found together in the law office of the said Edwin D. Crites, in the city of Chadron, in the nighttime,   *   *   *   and would then use such fact of the presence of said Crites and said Mrs. Hood in said office at said time as a basis for compelling, by threats of exposure for alleged marital misdemeanors, indiscretions and scandals, and by personal violence, if necessary, the said Crites and Mrs. Hood to sign written admissions and acknowledgments of marital misdemeanors and indiscretions, and would compel the said Edwin D. Crites, who was an attorney and counselor at law as aforesaid, and the county and prosecuting attorney in and for said county of Dawes, unlawfully, improperly, and forcibly, if necessary, and against his will, to dismiss certain criminal prosecutions then pending against one of the conspirators, and others,   *   *   *   and to coerce and compel the said Crites to abstain and refrain from thereafter seeking election to public office, and to coerce, and compel the said Mrs. Robert Hood to refrain from making any defense to said contemplated suit for divorce by her said husband, and to waive and abandon any claim, demand or right for alimony therein, all for the unlawful, unprofessional and wicked purpose and with the intent thereby to procure false and perjured testimony whereon to obtain a decree of divorce for the said Robert Hood, which the said Fisher well knew could not be lawfully obtained on truthful testimony."

. It alleges various actions on the part of defendant and other conspirators to carry out the conspiracy. It seems

to be conceded that the conspiracy existed, and that Hood had employed the detectives for the purposes alleged, and that active and vigorous efforts were made to carry out .the plan; also that this defendant was acting for Hood as his attorney, and knew all about their plans and purposes, and was continually consulting with the conspirators with reference thereto. Witnesses testified that this defendant planned and continually assisted in carrying out the conspiracy. The defendant denied that he planned or advised the action of the conspirators, and testified that he told one of the conspirators that "Mr. Crites is too wise to have any arrangement or meeting of that kind, and I said, if he did have, I said, Mr. Hood knows that his wife has a right to go and see her attorney, and I said that he wouldn't pay any attention to it; I said it is a piece of——foolishness," and similar statements. He does not testify to any active measures of his to prevent the conspiracy or its consummation. The consipiracy was largely intended in aid of the litigation in which defendant was employed as attorney for Mr. Hood, and Hood was actually prompting it. Defendant's objections, as testified to by him, were wholly on the ground that it was impracticable, and would not accomplish the desired results.

An attorney and counsellor at law is an officer of the courts, and the proper sense of the importance and honor of his high calling will prevent his connection with litigation in which such methods are practiced, and would lead him at once to prevent such attempts or withdraw from the employment. But the plans were discussed and made in the defendant's office, and he attempts the further justification by the assertion that some parts of the scheme were discussed with his law partner, and not with himself.

"It is the duty of an attorney and counsellor: First, to maintain the respect due to the courts of justice and to judicial officers; second, to counsel or maintain no other actions, proceedings or defenses, than those which

appear to him legal and just, except the defense of a person charged with a public offense; third, to employ, for the purpose of maintaining the cause confided to him, such means only as are consistent with the truth; fourth, to maintain inviolate the confidence, and, at any peril to himself, to preserve the secrets of his clients; fifth, to abstain from all offensive practices, and to advise no fact prejudicial to the honor or reputation of a party or witness required by the the justice of the cause with which he is charged; sixth, not to encourage the commencement or continuance of an action or proceeding from any motive of passion or interest.'' Rev. St. 1913, sec. 269.

The fourth count charges that the defendant became offended against this complainant, and ''proceeding from motives of passion, interest and hatred on his part against this complainant, instigated, and ever since has maintained, continuous litigation of one sort and another against this conplainant, before the general land office, the courts of this state and of the United States; that said litigation was malicious and without probable or any cause, was illegal and unjust, and was not consistent with truth.'' It is alleged in these proceedings that defendant committed perjury and was guilty of various acts of professional misconduct, and, among other things, it is alleged that, in contesting a filing of complainant on government land, the defendant falsely procured his minor son to represent himself as the head of a family and pretend to adopt a younger brother, while in fact both sons were living with the defendant and were supported by him; that the defendant filed affidavits before government officers to maintain these false claims, and himself committed perjury therein. Without attempting to analyze the great mass of evidence as to perjury of defendant in these matters, or his good faith in the many actions he brought against complainant, it is sufficient to consider his attempt to secure this government land in the name of his minor son.

If a minor may under some circumstances be the head of a family within the meaning of the homestead law this defendant knew that the pretended adoption of his younger brother was a farce, and that both sons were dependent upon their father for support. It is plain that he adopted the scheme to impose upon the federal officials and to obtain for his son government land illegally.

The fifth count charges that defendant and others "associated themselves together under the name of Surety Title & Trust Company, which they claimed to have incorporated;" that in fact there was no incorporation, and their main purpose and practice was to find defects in titles and obtain quitclaim deeds that would enable them to challenge the title of the owner; that pursuant to this policy they purchased fictitious claims and began litigation; that a writing was executed in the name of this company with the defendant, whereby he agreed "to perform for a period of four years, from this date, all necessary legal business of this company, and his compensation therefor is to be 20 per cent. of the capital stock now issued;" that defendant afterwards brought an action against the company upon the contract, had the summons served upon himself as secretary, and procured judgment thereon without the knowledge of any one interested; "that said purported judgment was so procured to be entered for the purpose of enabling the said Fisher to realize on a fraudulent claim, and for the purpose of enabling him to make a purported levy thereunder on lands owned by one Fred Hoyt, in trust for the Sheridan Realty Company, a corporation of Sheridan county, Nebraska, he, the said Fisher, claiming that said lands were held in trust by said Hoyt for said alleged corporation, Surety Title & Trust Company. * * * Upon the entry of said supposed judgment, the said Fisher caused an execution to issue out of the office of the clerk of said district court thereon, and caused the same to be levied upon the land so held in trust by

said Hoyt, without any notice to said Hoyt, and caused the same to be advertised for sale by the sheriff to satisfy said judgment, although said land was not then and never had been the property of said Surety Title & Trust Company, as said Fisher then and there well knew; that said Hoyt, being advised by friends of such sale, instituted his suit in injunction in said district court, as plaintiff, against said Fisher and the sheriff of said county as defendants, to restrain said Fisher and said sheriff from making sale of such lands, and such proceedings were had in said cause in said court, that the issues were joined, a hearing had, and a decree entered in favor of said Hoyt and against said Fisher and said sheriff, and that thereupon the said Fisher prosecuted an appeal to this court from such decree of said district court, and said appeal is still pending."

The sixth count is that defendant filed a large fictitious claim against the estate of a decedent, with many specifications of unprofessional and even rascally conduct of defendant in connection therewith. It is not necessary to analyze the evidence, which is voluminous, in support of these fifth and sixth counts. Even if it should be found that the evidence is not sufficient to require disbarment on either of these two counts, if considered alone, which we understand is the view of the referee, yet the nature of the charges and the evidence supporting them will require that they be considered in connection with the facts upon which the disbarment is based. If an attorney has been guilty of such misconduct as requires disbarment, and there is clear evidence of subsequent reformation, there would be no occasion for disbarment under such circumstances. Even if he had been disbarred at the time of such misconduct, clear proof of reformation might justify his reinstatement. In this case the misconduct of defendant has been practically continuous, so that each unworthy act tends to aggravate the main offenses. Each of the

first four counts is sufficiently proved.  6 C. J. 601, sec. 61.

We therefore approve and confirm the findings and conclusions of the referee, and it is ordered that the admission of the defendant, Allen G. Fisher, to the bar of this state is canceled and annulled, and his name stricken from the roll of attorneys and counselors at law.

DISBARRED.

MORRISSEY, C. J., not sitting.