STATE, EX REL. NEBRASKA STATE BAR ASSOCIATION, RELA-
TOR, V. GEORGE H. MERTEN, RESPONDENT.

7 N. W. (2d) 874

FILED JANUARY 29, 1943. No. 30638.

*Walter R. Johnson, Attorney General,* and *John H. Comstock,* for relator.

*George H. Merten, pro se.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is a disciplinary action instituted by the state of Nebraska, on relation of the Nebraska State Bar Association, against George H. Merten, respondent, a duly licensed at-

torney at law, wherein it is sought to bring disbarment because of illegal, improper and unethical practices and conduct which have been engaged in by him. A complaint containing the charges against the respondent was filed in this court on which issues were joined, whereupon the matter was referred to Harold A. Prince, a practicing lawyer of Nebraska, as referee, whose province it was under the reference to make findings of fact and conclusions of law and to make report thereof to this court. The proceeding is now before the court on the report of the referee and the exceptions taken thereto by the respondent. The report contains a finding and a conclusion that the respondent has been guilty of illegal, improper and unethical practices and conduct and a recommendation that he be disbarred on account thereof.

The complaint is signed by George W. Pratt, Jack W. Marer, Carroll O. Stauffer and Clarence T. Spier, the members of the Committee on Inquiry of the Fourth Judicial District of the Nebraska State Bar Association. It is sworn to by Clarence T. Spier, Chairman of that Committee. Because of its length it will not be quoted herein.

The substance of the complaint and the factual situation to the extent disclosed is that one Thomas Dean, a resident of Douglas county, Nebraska, died testate on April 12, 1923. By his will he left his estate in trust for his sister, Maria Lund, for her lifetime, with provision that on her death it be divided among a brother and two sisters, by name John Dean, Deborah Barrett and Julia Conway. The respondent, with another, qualified as administrator with the will annexed. As a part of the assets of the estate there was a promissory note of the face value of $12,000 which was secured by a mortgage on certain lands in Box Butte county, Nebraska. R. M. Worley was maker of the note. Thomas Dean, in his lifetime, had pledged the note as collateral security for a loan in the amount of $3,500. The note was held at the Alliance National Bank. It appears that there remained unpaid on the indebtedness for which the $12,000 note was pledged as collateral $3,165. When respondent

filed his inventory as administrator, he failed to describe the note as an asset at all. He made reference to it, but claimed for the estate only a probable equity in the note. His reference and description is the following: "Probably equity in one note which was deposited by deceased as a pledge. Note not—possession of administrators." The inventory was filed August 9, 1924. A final report was filed on which a decree was entered by the county court on September 2, 1924. No mention was made of the note in the final report or at any other place in the probate proceedings except as above indicated in the inventory. On this final report the administrators received their discharge. On the closing of the probate proceedings the respondent became trustee, the trustee named in the will having refused to accept the trust.

In 1925 R. M. Worley refinanced the loan and it was reduced to $11,000. The record here does not disclose what disposition was made of the difference of $1,000. Prior to this the $12,000 note had in some manner come to the First National Bank of Omaha to some alleged owner thereof. Just how alleged ownership had been transferred is not made clear. Respondent claims to have had no part in it. On refinancing however two mortgages were given to secure the indebtedness, one a first mortgage for $6,000 and one a second to secure ten notes of $500 each.

The first mortgage was liquidated by a net payment of $5,650. The reason for this net amount is not made clear here. The check for this net amount was made to respondent. On the face of the check appeared the statement that it was for Sam Riseman. Respondent stated that he indorsed the check, cashed it and immediately turned the proceeds over to Riseman. How Riseman became entitled to this money is not made clear. The ten notes for $500 each were made payable to Riseman. The first six were paid, but the check or draft in each instance was made payable to respondent. He says that he obtained the payments but immediately delivered the money less about $2.50 in each instance which was paid to him for his trouble. Respond-

ent disclaims any interest on the part of the Thomas Dean estate in this asset, at least from the date of refinancing, and insists that at no time did he come into possession or control of the $12,000 note. He suggests that there was some character of foreclosure by the holder of the note for $3,500 which took away the interest of the estate in it. Just how this was done respondent does not clearly or sufficiently explain, especially since all collections after refinancing passed through his hands.

Maria Lund having died as had also Julia Conway, Thomas Reilly, as heir of Julia Conway, who became a beneficiary of the will of Thomas Dean, and others in 1931 instituted action in the district court for Douglas county, Nebraska, against respondent for an accounting in which they charged him with fraudulent conversion of the $12,000 note and mortgage.

In that action, first by motion and again in his answer, the respondent challenged the jurisdiction of the district court, which challenge was overruled.

A trial was had to the court and in a decree and supplemental decree the court found that respondent fraudulently caused the $12,000 note and mortgage to be assigned to one Sam Riseman; that he obtained his discharge as administrator in the county court by fraud; and that by his fraudulent acts there was lost to the estate of Thomas Dean $5,-365 and interest. The decree purported to set aside the discharge as administrator and in the decree judgment was rendered against respondent for $8,315.15 for property lost to the estate by fraud. Appeal was taken to the supreme court which was dismissed (*Reilly v. Merten*, 125 Neb. 558, 251 N. W. 114) thus leaving the decree of the district court in full force and effect.

Respondent has not satisfied this judgment either in whole or in part, and in this action he insists that in the premises he has been guilty of no fraud or wrong-doing.

On the record as briefly outlined here the referee in his report recommended disbarment of the respondent.

To the report the respondent filed numerous exceptions, some of which require discussion and some do not.

In his argument respondent contends that an order striking from his answer the statement that the complaint did not state a cause of action was prejudicial. It may be said that this statement might well have remained in the answer, but there was no prejudicial error in the striking, since clearly the complaint did set forth good and sufficient grounds upon which to base a hearing for disbarment.

Respondent pleaded that the decree and judgment of the district court wherein he was held to have defrauded the estate of Thomas Dean was null and void and of no force or effect. This plea was stricken. Respondent claims that this was error. As grounds for this contention he asserts that his discharge as administrator was a final determination of his relation to the estate and that the approval of his final report and discharge by the county court was a bar to any action except an action in the county court to set aside the judgment of that court.

It may be true that the portion of the decree of the district court which purports to vacate and set aside the final judgment of the county court is null and void, and that the district court was without jurisdiction to that extent, but necessity does not arise for a determination of that question here. Certain it is that the district court had jurisdiction to render the portions of the decree and judgment that are material here.

As has already been observed, the will of Thomas Dean created a trust of all of the assets of the estate, subject of course to legitimate claims and the expenses of administration. In due course respondent became trustee. Before he became trustee for the purpose of carrying into effect the provisions of the will, his relation to the assets of the probate estate was, in equity, that of a trustee. In *Blake v. Chambers*, 4 Neb. 90, this court said: "In equity, the assets which thus pass into the hands of an executor are treated as a trust fund, and held by him for the benefit of all persons interested therein, according to their relative priorities, privileges and equities." In the same opinion it is further stated: "As to the jurisdiction of the district

court, over the subject-matter of the action there is no doubt. That court is one of general jurisdiction, and its powers are ample, in all cases of fraud by executors or others holding a fiduciary relation, to compel the proper application of trust funds committed to their care." See, also, *Wunder v. Crane*, 100 Neb. 446, 160 N. W. 892; *In re Estate of Frerichs*, 120 Neb. 462, 233 N. W. 456. There can be no question that the district court had jurisdiction over the subject-matter in the case of Reilly v. Merten, hereinbefore referred to, and to enter such decree and judgment as was required agreeable to equity and good conscience.

It can make little, if any, difference that the conversion took place before or after the closing of the probate estate, and this point is not made quite clear, but the most forceful inference is that it took place after. This being probably true, no court but the district court did have jurisdiction.

Next respondent complains that the Nebraska State Bar Association is not the proper party to maintain this action; that it has no legal existence.

In passing it will be said that by virtue of the case of *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N. W. 265, the association came into being and it has continued henceforth. This legal existence cannot be properly attacked collaterally as respondent seeks to do in this action.

One of the fundamental purposes of the integration of the bar was, through the association and its subordinate and controlled agencies, to bring to the attention of this court departures of members of the bar from the high standards of rectitude demanded in the true relationship of attorneys to courts, clients and the public generally. It is not reasonable to recognize this purpose and at the same time defeat it by denying the association power to make presentation formally of such departures.

In the opinion in the case of *In re Integration of Nebraska State Bar Ass'n*, *supra*, it was stated:

"The primary duty of courts is the proper and efficient administration of justice. Attorneys are officers of the

court and the authorities holding them to be such are legion. They are in effect an important part of the judicial system of this state. It is their duty honestly and ably to aid the courts in securing an efficient administration of justice. The practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government."

A necessary and specific complement of this pronouncement is that the power exists in the judicial department of government to formulate and approve procedure for the bringing of lawyers to account for professional misconduct. The method of presentation herein employed is approved.

Coming now to the issue of misconduct charged against the respondent, the evidence fairly shows that the $12,000 note was an asset of the probate as well as of the trust estate; that respondent never at any time reported it in any legal proceeding, or ever indicated that he knew definitely of its existence, of the security behind it, of the charge against it, or that the charge against it was less than one-third of its face value; that there is a final judgment finding that respondent fraudulently converted and disposed of the note and converted the proceeds to his own use; that the evidence taken before the referee supports this judgment in that it clearly shows that all of the proceeds obtained after refinancing came into the hands of respondent.

Respondent's explanation is that the $12,000 note was foreclosed, sold and refinanced and that he collected the proceeds for the holder of the notes on refinancing. In the light of the difference between the face of the note and the charge against it which, in the light of the refinancing for $11,000 which indicated a real value of almost $6,000, it can be said with conviction that respondent was either guilty of fraud in the disposition of the note, or of gross and inexcusable dereliction of duty in failure to protect the interest represented by him, either of which would clearly

show that he lacks those qualities so necessary to a proper performance of the true functions of a lawyer.

By either culpable design or pernicious neglect of duty this large sum of money was lost to the estate and at no time since has respondent manifested any degree of remorse. His entire defense has been technicality, denial and self-exculpation.

It has been many years since the occurrence of the acts complained of and the date when the judgment was rendered against respondent, but no effort appears to have been made by him to correct his wrong. This makes peculiarly applicable here the following from former decisions of this court:

"When the misconduct of an attorney has been practically continuous, and there is no evidence of reformation or change of conduct, disbarment will not be barred by lapse of time as to any of such misconduct." *State v. Fisher,* 103 Neb. 736, 174 N. W. 320.

"Where the unprofessional and unethical conduct of an attorney has been continuous over a period of years, and there is no satisfactory evidence of reformation or improved conduct, a disciplinary proceeding will not be barred by lapse of time as to any of such misconduct." *State v. Basye,* 138 Neb. 806, 295 N. W. 816.

The lapse of time may not be permitted to avail respondent anything in defense of the proceeding here. In the entire record nothing is found which would justify a conclusion other than that arrived at by the referee.

The order of admission of George H. Merten to the bar of this state is annulled, and his name is ordered stricken from the roll of attorneys and counselors at law.

Judgment of disbarment.

Rose and Eberly, JJ., not participating.