**William NIKLAUS, Plaintiff,**

v.

**Robert G. SIMMONS, Edward F. Carter, Frederick W. Messmore, John W. Yeager, Elwood B. Chappell, Adolph E. Wenke, Paul E. Boslaugh, George H. Turner, and Clarence S. Beck, Defendants.**

**Civ. No. 305–L.**

United States District Court
District of Nebraska.

April 21, 1961.

Supplemental Opinion Sept. 6, 1961.

Messmore, John W. Yeager, Elwood B. Chappell, Adolph E. Wenke, Paul E. Boslaugh, and George H. Turner, joining in a common motion; and,

(b) the defendant, Clarence S. Beck, acting alone.

While, in the pleading of the defendant, Clarence S. Beck, alternative motions for dismissal on the basis of the Statute of Limitations of Nebraska, under the several sections 25-208 and 25-219 R. R.S.Neb.1943, are joined with his primary motion for dismissal for failure to state a claim upon which relief can be granted, in view of the conclusion I have reached upon the issues tendered by the primary motion, I have considered it to be unnecessary to rule, and am not now ruling, upon those alternative grounds thus contingently asserted in support of the demanded dismissal.

The action was instituted by the plaintiff's filing in this court of a complaint against all of the defendants named in the caption hereto, and also against two other individual citizens of Nebraska, two Nebraska corporations, and three corporations organized under the laws of states other than Nebraska. Of the corporate defendants originally designated, one was a Nebraska entity engaged in the operation of a construction business, and each of the others was a corporation engaged in business as a surety or casualty company. Upon, and by an order made and given on September 20, 1960 (filing 38), that complaint was stricken from the files, on the ground of its scandalous and scurrilous character. But by leave of court, obtained on October 14, 1960 (filing 40), the plaintiff, on October 19, 1960, served and filed the Amended and Supplemental Complaint[1] (filing 39). To that amended and supplemental complaint only the persons so designated in the caption hereof are made defendants. I, therefore, assume, and I think correctly, that the other original defendants are no longer being proceeded against. Actually, none of

William Niklaus, plaintiff, pro se.

Walter D. James and John J. Wilson, Lincoln, Neb., for defendants Robert G. Simmons, Edward F. Carter, Frederick W. Messmore, John W. Yeager, Elwood B. Chappell, Adolph E. Wenke, Paul E. Boslaugh and George H. Turner.

Gerald S. Vitamvas, Lincoln, Neb., for defendant Clarence S. Beck.

DELEHANT, Senior District Judge.

By way of a departure from the customary usage here, this memorandum is being written in the first person. That may serve to minimize the confusion which, regard being had to the official positions of all of the defendants except one, might arise from the frequent employment of the term, "the court."

Ruling is presently being made upon separate motions to dismiss the amended complaint of plaintiff, served and filed herein by,

(a) the defendants, Robert G. Simmons, Edward F. Carter, Frederick W.

---

1. It is difficult to perceive in what respect, filing 39 may be appraised as a "supplemental" pleading. But I have accepted plaintiff's designation of it.

the original corporate defendants which were organized under the laws of states other than Nebraska appears ever to have been served with process. I understand, therefore, that the presently moving parties are the only defendants against whom the action remains pending.

First, I shall summarize, as fully as appears to be necessary, yet as briefly as is allowable, the averments of the Amended and Supplemental Complaint; for it is the adequacy of those averments which alone the separate motions to dismiss severally challenge. In the interest of brevity, I shall refer to it as "the complaint," in full awareness that I am referring to the amended pleading.

The complaint asserts that Title 28 U.S.C. § 1343, gives this court jurisdiction over the subject matter of the action; that the plaintiff and all of the defendants are citizens of Nebraska; and that plaintiff's action arises under Article I, section 8, and Article IV, section 4, of the Constitution of the United States; Article VII, and Article XIV, section 1 of the Amendments to such Constitution; and Title 28 U.S.C. § 1343; Title 42 U.S.C.A. §§ 1983 and 1985; and Title 18 U.S.C. § 241.

Then it alleges that plaintiff was born in the United States on August 1, 1885;

that, in the way of an education, he received from Hanover College (Indiana) on June 9, 1909 the degree of Bachelor of Science, and from the University of Nebraska, upon his graduation with honors from its School of Law, on June 9, 1915, the degree of Bachelor of Laws; his admission, after examination by the Nebraska State Bar Commission, and by order of the Supreme Court of Nebraska, on July 1, 1914, to practice as an attorney and counsellor of the bar of that court and of the state of Nebraska; his admission on September 24, 1914 to the bar of this court; and his admission during the year 1945 to practice as a member of the bar of the Court of Appeals, Eighth Circuit; and that "at the times herein mentioned,"[2] Robert G. Simmons was the duly elected Chief Justice, and Edward F. Carter, Frederick W. Messmore, John W. Yeager, Elwood B. Chappell, Adolph E. Wenke, and Paul E. Boslaugh were the duly elected and qualified Associate Justices, of the Supreme Court of Nebraska, and George H. Turner was the duly appointed Clerk of the Supreme Court of Nebraska; and Clarence S. Beck was the duly appointed Deputy Attorney General, and later the duly qualified Attorney General of Nebraska.[3]

---

2. By which it is sufficiently clear that the pleader means to identify not the dates already indicated, but rather the dates of the alleged wrongs to him of which he complains.

3. Perhaps, the actual facts respecting the official tenure of the several defendants should be set out, for they are matters of public record which neither the plaintiff nor any defendant will question. Robert G. Simmons became Chief Justice of the Supreme Court of Nebraska on November 12, 1938, and continuously since that date has been, and yet is the occupant of that office. Edward F. Carter became an Associate Justice of that court on the Thursday next after January 3, 1935, and continuously thereafter has been and now is such Justice. Frederick W. Messmore became an Associate Justice of that court on August 23, 1937 and ever since that date has been and now is such Justice. John W.

Yeager became an Associate Justice of that court on November 18, 1940 and continuously thereafter has been and yet is such Justice. Ellwood (that being his correct name) B. Chappell became an Associate Justice of that court on the Thursday next after January 6, 1943, and remained in that office continuously thereafter until the expiration of his final term on January 5, 1961. Adolph E. Wenke became an Associate Justice of that court on the Thursday next after January 6, 1943 and remained in that office continuously thereafter until his death on March 3, 1961, thus, after the institution of this action. Paul E. Boslaugh became an Associate Justice of that court on the Thursday next after December 31, 1948 and remained in that office continuously thereafter until the expiration of his final term on January 5, 1961. George H. Turner was Deputy Clerk of the Supreme Court of Nebras-

In the complaint the plaintiff next alleges that at some time during, or prior to, 1946, the defendants entered into a conspiracy to injure plaintiff by depriving him of his license to practice law in Nebraska by the commencement and prosecution against him (of a disbarment proceeding) in the name of a fictitious entity as plaintiff; that in furtherance, and in the prosecution, of that conspiracy, defendant, Clarence S. Beck, acting under color of state authority and of his then office of Deputy Attorney General of Nebraska, and in concert with his codefendants, except the defendant, Paul E. Boslaugh (who had not then become an Associate Justice of the Supreme Court of Nebraska), "encouraged, excited and stirred up" a suit or controversy against plaintiff, with intent to injure him, in the name of "Nebraska State Bar Association," which plaintiff characterizes as "a fictitious entity," which conduct of the defendant, Clarence S. Beck, the plaintiff alleges to be violative of Section 28–716, R.R.S.Neb.1943;[4] that in preparing the petition whereby (the disbarment proceeding against plaintiff) was commenced, the defendants, in furtherance of the conspiracy, attempted to conceal the defect in parties in such proceeding by denominating the plaintiff as "State of Nebraska, ex rel. Nebraska State Bar Association, Relator;" that the State of Nebraska had no interest in the subject matter of such petition, and the employ-

ment of the language, "State of Nebraska" in the title to the proceeding was and is meaningless and surplusage, as was and is also the employment of the word, "Relator"; that the Nebraska State Bar Association was not a corporation, was not formed for the purpose of carrying on any trade or business, or holding any species of property in the State of Nebraska, and was not a labor union representing employees in collective bargaining with employers, and was not, by any statute of Nebraska, authorized to sue or be sued; that the disbarment proceeding thus commenced was an action without a plaintiff; that, also in furtherance of such conspiracy, the defendant, George H. Turner, acting under color of his office as Clerk of the Supreme Court of Nebraska, and under color of state authority, caused the petition in such disbarment proceeding to be filed for record and entered in the docket of the Supreme Court of Nebraska as an instrument calculated to impel that court to action in an adversary proceeding, entitled State ex rel. Nebraska State Bar Ass'n v. Niklaus, 149 Neb. 859, 33 N.W. 2d 145; that on June 29, 1948, in furtherance of such conspiracy and in concert with their codefendants, George H. Turner and Clarence S. Beck, the defendants, Robert G. Simmons, Edward F. Carter, Frederick W. Messmore, John W. Yeager, Elwood B. Chappell and Adolph E. Wenke,[5] acting under color of their respective offices and by state

ka from January 1, 1927, to May 2, 1932; was Acting Clerk of that Court from May 2, 1932 to May 14, 1932, and now is and continuously since May 14, 1932 has been the Clerk of that Court. Clarence S. Beck was an Assistant Attorney General of the State of Nebraska from January 5, 1939 to April 15, 1942, and thereafter from April 14, 1945 to February 1, 1947, Special Assistant Attorney General of the State of Nebraska, from February 1, 1947 to April 10, 1947, Deputy Attorney General of the State of Nebraska, from April 10, 1947 to March 1, 1950, and Attorney General of Nebraska from March 1, 1950 to January 5, 1961. Although it is of no present significance, it is observed that he is presently one of the judges of the District Court for the Thirteenth Judicial District of Nebraska.

4. The cited section 28–716, R.R.S.Neb. 1943, is in this language:

"28–716. Stirring up suits and controversies; penalty. If any judge, justice of the peace, clerk of any court, sheriff, coroner, constable or attorney at law shall encourage, excite and stir up any suit, quarrel or controversy between two or more persons, with intent to injure such person or persons, such judge, justice of the peace, clerk, sheriff, constable or attorney at law shall be fined in any sum not exceeding five hundred dollars, and shall be answerable to the party injured in treble damages."

5. The defendant, Paul E. Boslaugh, was not then a member of the Supreme Court of Nebraska. (Supra.)

authority considered and ruled upon such petition for disbarment, thereby treating Nebraska State Bar Association as the relator therein, and granted the prayer of the petition, and adjudged that the plaintiff's license to practice the profession of law be revoked, and that the plaintiff be disbarred from the further practice of the profession of law in the State of Nebraska; and that since the entry of said order or judgment, the defendants have treated it as a valid order of the Supreme Court of Nebraska, forever disbarring the plaintiff from the practice of law in the State of Nebraska.

The plaintiff in the complaint further alleges that after the entry of such judgment of disbarment, the defendants [6] "revitalized the conspiracy as one having for its object and purpose the further oppression, persecution, abuse, harassment and annoyance of the plaintiff;" that, in furtherance, and in the prosecution, of such conspiracy, and acting in concert with his codefendants, the defendant, George H. Turner, procured and employed one William L. Walker, an attorney at law, to prepare and file in the District Court of Lancaster County, Nebraska, a petition in the name of Nebraska State Bar Association, as plaintiff, against the plaintiff and his wife, Mary Niklaus, as defendants, of which the object or purpose "was for the extortion of money from the defendant [7] for the benefit of all the members of the Nebraska State Bar Association; that such petition was filed on or about February 18, 1952; that to such petition, the present plaintiff and his wife (as defendants in such petition) filed a special demurrer on the ground that Nebraska State Bar Association was a voluntary unincorporated association, and not by statute authorized to participate as a party plaintiff in any adversary proceeding before any tribunal; that on or about March 8, 1952, before a judge of the District Court of Lancaster County, Nebraska, hearing was had on such demur-

rer, during which William L. Walker, as attorney for plaintiff in the action then and there pending, confessed the demurrer; whereupon, the judge presiding, for such court, made the following docket entry: "Pltf. in open court confesses the demurrer and demurrer is therefore sustained." And, obviously as a legal conclusion, the plaintiff in his complaint at this juncture asserts that the alleged confession of the demurrer forever estopped the present defendants from thereafter asserting or claiming that the plaintiff was ever legally deprived of his right to practice law in the State of Nebraska.

Then, in the complaint herein, the plaintiff alleges that, in furtherance, and in the continued prosecution, of the alleged conspiracy against the plaintiff, the defendant, Clarence S. Beck, acting under color of his office as Attorney General of the State of Nebraska, and in concert with his codefendants herein, "encouraged, excited and stirred up another suit or controversy against William Niklaus in violation of Section 28–716, R.R.S.1943," in that, on or about November 27, 1957, he prepared an "Information, Affidavit and Motion for Citation for Contempt of Court," entitled "In the Supreme Court of Nebraska, State of Nebraska ex rel. Clarence S. Beck v. William Niklaus, Defendant," and caused that pleading to be filed in the office of the Clerk of the Supreme Court of Nebraska, and docketed as, "Original No. 34367;" that the object of such original action was to procure the punishment of the plaintiff for his alleged violation of the Order and Judgment for his disbarment (supra); that, also in furtherance, and in the continued prosecution, of such conspiracy, and under color of their respective offices, supra, the defendants, Robert G. Simmons, Edward F. Carter, Frederick W. Messmore, John W. Yeager, Elwood B. Chappell, Adolph E. Wenke, and Paul E. Boslaugh, in concert with the defendants, George

---

6. Apparently, not thereafter excepting the defendant, Paul E. Boslaugh.

7. Obviously meaning thereby the plaintiff herein.

H. Turner and Clarence S. Beck, convicted the plaintiff as in contempt of court for alleged violations by the plaintiff of the order of the Supreme Court of Nebraska under date of June 29, 1948 for the plaintiff's disbarment (*supra*), and sentenced the plaintiff to pay fines aggregating $500, and to be incarcerated in the county jail of Lancaster County, Nebraska, until such fines and the costs of such proceeding should be paid; that thereafter plaintiff applied to the Supreme Court of the United States for a writ of certiorari to the Supreme Court of Nebraska for the review and vacation of the judgment of the Supreme Court of Nebraska last identified; that such writ of certiorari was, by the Supreme Court of the United States, denied on December 8, 1958, Niklaus v. State of Neb. ex rel. Beck, 358 U.S. 911, 79 S.Ct. 239, 3 L.Ed. 2d 231; and that the plaintiff during the month of January, 1959 paid such fine and costs in the sum of $515.

The plaintiff next, and in general terms, asserts in the complaint that all of the acts and conduct of the defendants, *supra*, were done with the purpose and intent to deprive the plaintiff of rights, privileges and immunities to him secured under the constitution and laws of the United States; and in the next succeeding paragraph of the complaint, identifies the constitutional rights, privileges and immunities, of which he was allegedly deprived, in this language:

"(1) The vested right to practice law in the State of Nebraska, under license duly granted, without due process of law;

"(2) The immunity from suit by an unauthorized and unqualified artificial person or entity;

"(3) The equal protection of the Nebraska statutes, Sections 25–313 [8] and 28–716 [9] R.R.S.1943; and

"(4) Discrimination: The defendants recognized and treated all citizens of Nebraska as immune from suit by an unauthorized or unqualified artificial person or entity and, at the same time, they denied the plaintiff the right to the same immunity."

By way of an allegation of damages, the plaintiff in his complaint, alleges his deprivation of $1,623.14 in cash funds, and his actual but unliquidated damage in the sum of $245,000 for his deprivation from June 29, 1948 to October 1, 1960 (the initial day of the month in which the amended and supplemental complaint herein was filed) of the right to practice law, and for his resulting humiliation, mental anguish, disgrace and physical deterioration. And, still relevant to damages, he concludes the averments of the complaint with this paragraph:

"The defendants and each of them, in the acts above stated, acted knowingly, wilfully, wantonly, maliciously and in violation of a criminal statute of Nebraska.[10] The statute, violated, provides that the injured party shall have and recover from the wrong doer treble damages. Therefore, the plaintiff is entitled to recover from the defendants and each of them the sum of $493,246.28

---

8. The text of Section 25–313, R.R.S.Neb. 1943, is in this language:

"25–313. Partnership or unincorporated association; designation; labor unions. Any company or association of persons formed for the purpose of (1) carrying on any trade or business, (2) holding any species of property in this state or (3) representing employees in collective bargaining with employers, and not incorporated, may sue and be sued by such usual name as such company, partnership or association may have assumed to itself or be known by. It shall not be necessary in such case to set forth in the process or pleadings or to prove at the trial the names of the persons composing such company."

9. The text of Section 28–716, R.R.S.Neb. 1943, is in language as quoted in footnote 4, *supra*.

10. Manifestly intending thereby to identify Section 28–716 R.R.S.Neb.1943, above quoted.

as punitive damages in addition to his actual or real damages. The total damages real and punitive amounts to $739,869.42."

And the amended and supplemental complaint concludes with a prayer for judgment in behalf of plaintiff against defendants and each of them "in the sum of $739,869.42, and for his costs and disbursements incurred herein."

On January 7, 1961, the defendants Robert G. Simmons, Edward F. Carter, Frederick W. Messmore, John W. Yeager, Elwood B. Chappell, Adolph E. Wenke, Paul E. Boslaugh and George H. Turner served and filed herein (filing 42) their motion to dismiss the amended and supplemental complaint of the plaintiff upon assigned grounds which, in the motion, are set out in this language:

"1. The amended and supplemental complaint fails to state a claim upon which relief can be granted against these defendants;

"2. The amended and supplemental complaint is based solely and only upon the disbarment of plaintiff from the practice of law in the state courts of Nebraska, and the right to practice law in the state courts of Nebraska is not within the protection of the Federal Civil Rights Act, or any other constitutional or statutory provision, upon which plaintiff seeks to predicate his action;

"3. The amended and supplemental complaint upon its face discloses that the plaintiff seeks to recover damages from these moving defendants for their acts as members of the Supreme Court of Nebraska, and the clerk thereof in litigation within the general jurisdiction of that court, and these moving defendants are immune from civil liability for acts in matters coming before that court."

The defendant, Clarence S. Beck, on January 9, 1961 served, and on January 10, 1961 filed herein (filing 44) a consolidated motion to dismiss the amended and supplemental complaint of the plaintiff.[11] That motion is tendered in three sections or phases, a "first motion," thus identified, and two successive motions, each tendered only alternatively and in the event that its predecessor motion, or motions, be not granted. Each of those alternative motions, or grounds for the consolidated motion, rests upon a separate section of Nebraska's statute of limitations. Because of my conclusion and action upon the "first motion," I do not in this memorandum reach or rule upon either the "second motion" or the "third motion." Concerning the "first motion" of defendant, Clarence S. Beck, it need now be said only that, like his codefendants, he assigns three separate grounds for the dismissal he seeks, of which the first two are indistinguishable, either in effect or in language, from grounds 1 and 2, *supra,* of the motion of his codefendants, and the third, departing from ground 3 of the motion of his codefendants by a verbal retailoring oriented to his own office, is in this language:

"3. The complaint on its face discloses that the plaintiff seeks to recover damages from the defendant for acts performed in his capacity as Attorney General and as an Assistant Attorney General of the State of Nebraska in litigation before the Supreme Court of the State of Nebraska and before other courts of general jurisdiction of the State of Nebraska and that this answering defendant is immune from civil liability for said alleged acts."

Upon those motions briefs have been served and delivered to me and oral arguments have been presented by the

---

11. It is here noted that the defendant making that motion imprecisely characterizes the pleading at which he aims as "the complaint," and neglects the circumstance that it is an amended pleading. But the real thrust of the motion is unmistakable, and I consider it to be directed to the "amended and supplemental complaint."

plaintiff in his own behalf and by counsel of record for the moving defendants. Ruling is now made upon such motions.[12]

The plaintiff's amended and supplemental complaint, as has already been made to appear, undertakes to assert a claim for damages, at the core of which is his disbarment on June 29, 1948 by the Supreme Court of Nebraska from the practice of law in that state, to the bar of which he had been admitted by order of the same court on September 24, 1914. Manifestly, the further judicial proceedings to which he alludes in his pleading were dependent upon, and rooted in, and supplemental to, the disbarment proceeding. It is appropriate, therefore, as briefly as may be done, to recall certain familiar features which contribute to the setting in which the present action was brought.

Prior to 1895, the legislative provisions touching admission to the bar of Nebraska were few and imprecise. See Chapter 7, Compiled Statutes of Nebraska, for 1893. It was briefly declared in that chapter that no person should be admitted to practice as an attorney "in the supreme and district courts of this state" unless such person should have studied in the office of a practicing attorney for a period of two years, and passed a satisfactory examination upon the principles of the common law under the direction of the court to which application is made and "it is shown to the satisfaction of said court that such applicant sustains a good moral character." It was also provided therein that, "The Supreme Court may, on motion, admit any practicing attorney of the District Court to practice in the Supreme Court, upon his taking the usual oath of office." The statute also provided the form of the oath to be taken, very briefly defined the general duties and powers of an attorney, declared his liability to disbarment for "deceit or collusion" and consent thereto "with intent to deceive a court, or judge,

or a party to an action or proceeding," but without the erection of any special procedure for such disbarment. Provision was also made for the general admission, without limitation to specific litigation, of attorneys practicing in the courts of record of other states. With the legislation in that situation, a practice arose, whereby admission to the bar was granted by the several district— or trial—courts. And much of the more amusing folklore of the profession has arisen out of the informality, and lack of penetrating inquiry, which characterized what in those courts were flatteringly regarded as "examinations" upon applications for admission to the bar. In that earlier interval admission to the bar by the Supreme Court of the state was not invariable and usually followed admission in one or another of the district courts of the state.

In the legislative session of 1895, by an amendatory act, Chapter 6, Laws of Nebraska, 1895, it was provided, among other things, that:

"Section 1. No person shall be admitted to practice as an attorney or counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of any other person, in any court of record in this state, unless he has been previously admitted to the bar by order of the Supreme Court, or of two judges thereof;[13] but this section shall not apply to persons admitted under pre-existing laws.

"Sec. 2. The supreme court shall fix times when examinations shall take place, which may be either in term or vacation, and shall prescribe and publish rules to govern such examinations, and may appoint a commission composed of not less than three persons learned in the law to assist in or conduct any such ex-

---

12. Limited in the instance of the motion of defendant, Clarence S. Beck, to what is therein denominated, "first motion."

13. The total personnel of the court then included a Chief Justice and two Associate Justices.

amination or examinations. But no person shall be admitted to the bar unless such person shall have regularly and attentively studied law in the office of a practicing attorney, for the period of two years, and shall pass a satisfactory examination upon the principles of the common law, or, as a regular graduate of the College of Law of the University of Nebraska, and is twenty-one years of age, and it is shown to the court that such person sustains a good moral character."

On December 18, 1900, acting upon the report of the commission to pass upon, and report the qualifications of applicants for admission to the bar, appointed by the Supreme Court of Nebraska at its September, 1900 term, that court, by a published opinion and order, defined certain tests for admission to the bar of the state. In that opinion and order the court, among other things, declared that "the plain intention of the legislative power, and the necessary effect of the act above referred to" (i. e. Chapter 6, Laws of Nebraska, 1895) "was to vest the power to admit persons to practice as attorneys and counselors of the courts of this state, solely in the supreme court;" that such act, by necessary implication, repealed previous legislation authorizing the general admission to practice in Nebraska of attorneys resident and practicing in other states; that an applicant for admission must be a citizen of the United States and a resident of Nebraska; that, by comity, an alien or an attorney resident in a state other than Nebraska may be permitted to conduct specific pending litigation, but not alone to institute an action, in a court of this state; that an applicant for ad-

mission must have attained his legal majority; that exemption from the requirement of study in the office of a practicing attorney, in consequence of study in a School of Law be limited to study in the School of Law of the University of Nebraska;[14] that a "practicing attorney" to qualify as a preceptor for the instruction of an applicant for admission must be one admitted and practicing in Nebraska; and that "admission to the practice is a privilege, and not a right; and the power which grants the privilege[15] can annex the terms and conditions on which the same may be exercised." In re Admission to the Bar, 61 Neb. 58, 84 N.W. 611, 612.

While the statutes of Nebraska have, by necessary implication, recognized the validity and effectiveness of the judicial power to disbar attorneys at law, they have never assumed broadly or, except for the limited reason of deceit or collusion, Section 7–106 R.R.S.Neb.1943, to define the grounds for such action, or in any wise to erect a procedural program by which it must, or even may, be accomplished. They have rather—and properly—left the problem of the disciplining of attorneys at law to the judiciary, that coordinate branch of government which, principally, the members of the bar serve, and which determines the qualifications for their admission. Quite early, the district courts which then admitted attorneys to practice, came also to exercise the authority to impose disciplinary measures upon them. But the Supreme Court of the state also exercised a like authority, and upon a state-wide pattern. And eventually, and on May 3, 1906, that court, in In re Disbarment Proceedings of Newby, 76 Neb. 482, 107 N.W. 850, 852,[16] thus ex-

---

14. With legislative sanction, that restriction has long since been eliminated in the state.

15. That is, the Supreme Court of Nebraska.

16. Interestingly, that proceeding had been instituted in the district court, and, on proceedings in error brought by Newby to review an order of the district court

for his disbarment from practice anywhere in Nebraska, came to the Supreme Court, which modified the district court's order in such wise as to limit its operation to the district whose court had entered it, and retained jurisdiction over the proceeding insofar as it was aimed at Newby's right to practice elsewhere in the state.

plained the jurisdictional grounds and the respective areas of relief in disciplinary proceedings:

> "Our statute contains no provision for disbarment proceedings. This matter is left to the common-law power and duty of the various courts. It is a principle of general, if not uniform, application that the court which is intrusted with the power and the duty of determining the qualifications for admission to the bar has, by implication, the power and duty also to determine when those qualifications are wanting, and when the privilege of that high calling has been forfeited. *This court has the sole power of admission to the bar, and therefore has [the] sole power to annul such admission when sufficient cause appears. Charges of misconduct and deceit in the district court are properly entertained and dealt with in that court. Charges of criminal or immoral conduct calling for disbarment should be addressed to this court.*" (Emphasis added.)

See also State ex rel. Attorney General v. Burr, 19 Neb. 593, 28 N.W. 261; In re Dunn, 85 Neb. 606, 124 N.W. 120; State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N.W. 95; State ex rel. Sorensen v. Goldman, 127 Neb. 340, 255 N.W. 32; State v. Fisher, 103 Neb. 736, 174 N.W. 320.

Somewhat earlier, on November 8, 1900, in Morton v. Watson, 60 Neb. 672, 84 N.W. 91, the court had had occasion to consider the classification or character of a disbarment proceeding. The proceeding then before the court was one instituted originally in the District Court for the disbarment of Watson by "J. Sterling Morton [17] and other foremost citizens of the county" against whom, on the dismissal of the charges, a judgment for costs had been entered by the District Court. Reversing the judgment for costs, the Supreme Court said:

> "A proceeding of this nature is neither in its form or substance a civil or a criminal action. It partakes of the nature of neither. A disbarment proceeding is not an action within the meaning of that term as employed in the code. The parties who signed the information upon which this proceeding was based were not plaintiffs in a case. On the contrary, they were more nearly friends of the court, their action having been evidently actuated by a desire to assist it in an inquiry into the conduct of one of the members of its bar. To designate them as parties to an action, whereby they might be mulcted in costs, should the charges preferred be not sustained, would strongly tend to discourage disclosures of wrongful conduct on the part of members of the legal profession, and would therefore be against sound public policy. At law, costs are the mere creatures of statutes. As there is no law specially providing for taxation of costs in proceedings of this nature, and as the awarding of costs depends upon statute, the lower court was without power to tax them against these informers, who, in the sense employed by the Code, were no parties to the proceedings."

See also State ex rel. Sorensen v. Goldman, 127 Neb. 340, 255 N.W. 32; In re Watt & Dohan, C.C.Pa., 154 F. 678, citing and approving the ruling in Morton v. Watson, supra.

In Nebraska, the earlier proceedings for the disbarment or suspension of attorneys at law were conducted under a variety of forms. That continued to be true until the integration of the Nebraska bar, *vide infra.* In that early phase of the state's history, the practice most commonly pursued in disciplinary proceedings in the Supreme Court was

---

17. A distinguished resident of Otoe County, Nebraska, who had theretofore been a member of the Cabinet of President Grover Cleveland.

the filing by the state's Attorney General in the court of a petition charging a designated attorney at law with misconduct warranting disciplinary action in which "The State of Nebraska on the relation of the named Attorney General of Nebraska" was designated as "Relator" and the accused attorney was named as "Respondent" or as "Defendant." Upon such filing, process was issued and served on the accused, time for answer was provided, the issues were made up, hearing was had, generally through the presentation of evidence before a referee designated by the court, and a report and recommendation by such referee, and through review by the court of the record and the report and recommendation of the referee. Illustrative of that practice, along with many others which might be cited, are such proceedings as State ex rel. Spillman v. Priest, 118 Neb. 47, 223 N.W. 635; State ex rel. Good v. Black, 125 Neb. 382, 251 N.W. 109; State ex rel. Sorensen v. Ireland, 125 Neb. 570, 251 N.W. 119; State ex rel. Good v. Cooper, 131 Neb. 771, 270 N.W. 310; State ex rel. Hunter v. Marconnit, 134 Neb. 898, 280 N.W. 216; and State ex rel. Hunter v. Boe, 134 Neb. 162, 278 N.W. 144. Representative of the rarely employed procedure of an inquiry upon formal complaint or information by another lawyer or a citizen is the already cited Morton v. Watson, 60 Neb. 672, 84 N.W. 91. Somewhat more frequently resorted to was the device of a formal citation or rule to show cause of which examples include In re Disbarment Proceedings of Newby, 76 Neb. 482, 107 N. W. 850; In re Watson, 83 Neb. 211, 119 N.W. 451; and In re Dunn, 85 Neb. 606, 124 N.W. 120. It thus appears that in that phase of the state's history, the disciplining of attorneys at law was accomplished through a variety of procedural devices. And it may be accepted as true that what was required, irrespective of mere form, was a complaint, notice, time, and the right, to answer, a free and unhampered hearing with representation throughout by counsel, if that were desired, and final judgment upon due consideration of the record and the evidence.

At this point, it is in order to take notice of legislative action upon the subject of costs, probably, although not necessarily, evoked in the first instance by Morton v. Watson, supra. Effective on its approval as of April 10, 1911, in consequence of its inclusion of an "emergency clause," the state legislature enacted Chapter 170 of the Laws of Nebraska 1911, not as an amendatory, but as a new, enactment, entitled, "An Act to provide for taxing and paying costs in disbarment and contempt proceedings." Carried into later successive revisions and compilations of the state's statutes, it became Section 7–114 R.R.S., 1943, in the following language:

"7–114. Disbarment and contempt cases; costs. In all proceedings instituted for the suspension or disbarment of attorneys at law, and in all contempt proceedings, the court costs shall be taxed to the person suspended or disbarred or found guilty of contempt. When brought by the Attorney General in the Supreme Court, and the charges are not sustained, the costs shall be paid by the state. When commenced on motion of the court or by a member of the bar, or any other person, and the charges are not sustained, the costs shall be paid by the county in which the same is begun unless the court shall find that the informer acted in bad faith in making the charge, in which case the costs shall be taxed to said informer."

That provision, unchanged, remained in force from April 10, 1911 to September 18, 1955, therefore, through the pendency of the proceeding for the plaintiff's disbarment (*supra et infra*).

By Chapter 8, Laws of Nebraska, 1955, approved January 26, 1955, the legislature of Nebraska, enacted a measure which amended and amplified the section of the statute last quoted. The amended act, in three sections, was incorporated into the state's statutes as Sections

7–114, 7–115 and 7–116 R.R.S.Neb.1943, 1959 Supplement, and, under Nebraska's law, it became effective September 18, 1955. Those three sections follow:

"7–114. Disbarment and contempt cases; costs. In all proceedings instituted for the suspension, censure or disbarment of attorneys at law, and in all contempt proceedings, the court costs shall be taxed as the court shall deem equitable."

"7–115. Disbarment and contempt cases; court costs defined. As used in sections 7–114 to 7–116, unless the context otherwise requires, court costs shall be deemed to include, but not be limited to: (1) Costs and fees otherwise authorized by statute; (2) all costs and expenses approved by the court which are incurred by reason of reference of the matter to a referee for the taking of testimony in accordance with the rules of the Supreme Court; and (3) all necessary costs and expenses incurred in investigation and preparation of charges leading to the institution of proceedings for suspension, censure, or disbarment, or all necessary costs and expenses incurred by the respondent in defending against such proceedings *Provided,* the costs and expenses referred to in subdivision (3) shall be claimed by the successful party in the proceeding within thirty days after final disposition of the charges, after which the losing party shall have fifteen days in which to prepare and submit to the court objections to all or any part of such claim, whereupon the court without further hearing shall allow or disallow all or any part of such claim as costs, in its discretion."

"7–116. Disbarment and contempt cases; judgment for costs; transcript to district court; lien; effect. Judgments for costs herein provided for may be filed in the district court of any county in this state, and shall thereupon become a lien and be enforceable in such county in the same manner as other money judgments."

That legislation was in force and effect during the pendency of the litigation alleged by the plaintiff to have been conducted against the plaintiff in 1957 and 1958. And it is to be observed that the statute applied and applies to "all proceedings instituted for the suspension, censure or disbarment of attorneys at law and (to) *all contempt proceedings."* (Emphasis added.)

■ On September 20, 1937, the Supreme Court of Nebraska, upon the petition of a duly designated committee of attorneys of Nebraska, in behalf of the then voluntary organization known as Nebraska State Bar Association, and representing a large percentage of its membership, announced and made and entered an order for the integration of the bar of Nebraska by rule of court. See In re Integration of the Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 269, 114 A.L.R. 151. Without its detailed quotation, that opinion, in its entirety is now incorporated by reference into this memorandum. From it these salient features are recalled and mentioned. It poised the court's action upon the inherent power of the court as the responsible authority in the state's judicial department, and upon the court's exercise of its judicial discretion, in furtherance of its administration. It reasserted and again vindicated the court's power to promulgate rules of practice, to erect standards for admission to the bar, and to administer those standards by granting or declining such admission, and alone to suspend, discipline and disbar members of the bar of the state. It declared this power in a single sentence, "The matter of the admission, suspension, discipline and disbarment of attorneys still rests in this court, and this court alone." By the ruling then made, the court, *inter alia,* "organized, created and formed the *Nebraska State Bar Association;"* prescribed its name; declared its membership to include all persons who on January 1, 1938 should be, or there-

after should become, residents of Nebraska and licensed to practice law therein; classified its members either as "active" or as "inactive" and defined each such class and prescribed membership dues therefor; erected the offices in the Association and prescribed the duties of their respective occupants, and its several committees; and provided for the making of by-laws, the holding of regular and special Association meetings, and for a technique for the recommendation to the court of amendments of the rules then promulgated. Finally, the court, by appropriate language, erected a method or program for the consideration of complaints against members of professional misconduct, and the taking of steps looking to disciplinary measures on account thereof. Beyond the citation to Volume 133 Neb. pages 299 to 301, 275 N.W. pages 272 to 273, I refrain from the analysis of that method, and proceed to the rules in that behalf that were in effect at all dates involved in this action. It may be understood that the integrated Nebraska Bar Association is, and since its creation has continuously been an existing and operating entity, of which all members of the bar of Nebraska are and have been members.

In effect and operative at all times involved in this action were the Revised Rules of the Supreme Court of the State of Nebraska, in force September 1, 1945. Of those rules, Section III deals with Disciplinary Proceedings. And because of the significance of the rules therein embodied, they are now quoted in full:

"1. Nature of Proceedings; Purpose. Proceedings for discipline of attorneys shall be considered civil in their nature, and for the purpose of protecting the public and the good name of the members of the bar of the State of Nebraska. They may be instituted against any person who has been licensed to practice in the courts of the State of Nebraska.

"2. Institution of Proceedings; How Entitled; Who May Bring; Leave of Court Required. Proceedings for discipline of attorneys may be instituted and prosecuted in the name of the State of Nebraska on the relation of the Nebraska State Bar Association, or on the relation of any other person, if leave of court be first obtained. Leave may be granted to a private person to file proceedings as relator only upon a prima facie showing of probable grounds for disciplinary measures, and only after the matter has been submitted to the appropriate Committee of Inquiry, and reviewed by the Advisory Committee. Proceedings may also be instituted by order of the Supreme Court.

"3. Institution of Proceedings; Complaint; Docketing of Cause. Proceedings shall be initiated by the relator filing a verified complaint setting forth the grounds thereof with reasonable definiteness. The complaint shall be filed with the Clerk of the Supreme Court, who shall then docket the cause as an original proceeding in the Supreme Court.

"4. Service and Proof of Service; Manner; Registered Mail; Publication of Notice; Contents. Service upon the respondent may be had by serving upon him a copy of the complaint and notice of the time for answer in the same manner as service of summons is had in civil proceedings in the district courts of the state, in which case it shall be proved by the official return of the officer making such service. Service shall be deemed to have been waived if the respondent shall sign a written receipt for a copy of the complaint and notice. Service may likewise be had by the mailing by the clerk of this court of a certified copy of said complaint and notice by registered mail to the respondent at his last known address; and in that event the official return card of the United States mail, signed by the respondent, acknowledging receipt of the envelope containing the copy of said complaint and notice, shall

be deemed sufficient proof of service. In the event that it shall appear by affidavit that personal service cannot be had upon the respondent and that letters to the respondent's last known address are returned unclaimed, service may be had upon the respondent by publication of notice four successive weeks in some legal newspaper published in the county wherein the respondent last resided. Such notice shall state that complaint for disciplinary action has been filed in the Supreme Court of Nebraska against the respondent and shall give the date of filing and the time within which respondent is required to answer.

"5. Answer; Time of Filing; Extension. The answer of the respondent shall be filed within 20 days after service of notice and a copy of the complaint, or within 20 days after service by publication, as hereinbefore provided, shall have been completed. For cause shown the court may extend the time to answer.

"6. Default; Answer Tendering No Issue; Disposition of Cause. If no answer be filed within the time limited therefor, or if the answer tender no issue of fact or of law, the matter may be disposed of by the court on its own motion or on a motion for judgment on the pleadings.

"7. Reference; Taking of Testimony; Report of Referee. Upon the filing of an answer raising an issue of fact the court shall refer the matter to a member of the bar as referee. It shall be the duty of such referee to fix an early date for hearing, notify the relator and the respondent or their respective attorneys of record, and without delay to hear such testimony as may be introduced under the pleadings. The referee shall have all powers of a referee in civil actions in the courts of Nebraska. The referee shall observe the rules of evidence applicable in civil actions in the district courts of the State of Nebraska. He shall have a competent shorthand reporter present who shall take in shorthand and transcribe in typewriting all oral evidence adduced at the hearing had before the referee. The referee may continue the hearing from time to time as circumstances may require, but shall not delay his proceedings unless justice and equity so require.

"The referee shall make a written report stating his findings of fact and recommendations. The typewritten record of the proceedings shall have attached to it all of the exhibits offered at the hearing, and shall be certified by the referee; and the referee shall promptly transmit to this court his report, together with such record so certified.

"Upon the filing of an answer raising an issue of law only, the court may in its discretion refer the matter to a member of the bar as referee for such service in relation thereto as the court may by its order of reference direct.

"8. Motion for Final Judgment; Exceptions to Report. Within 10 days after the filing of such report, either party may file written exceptions to such report. If no exceptions are filed, the court in its discretion may consider the findings final and conclusive, and on motion shall enter such order as the evidence and law require.

"9. Briefs; Time of Filing and Service; Hearing of Case. If exceptions be filed to the findings or report of the referee, printed briefs and arguments shall be filed and oral arguments made in the Supreme Court as required by the rules of this court in civil cases. The party filing exceptions to the findings and report of the referee shall serve and file his brief within 30 days after the filing of such report and the brief of the adverse party shall be

served and filed within 30 days thereafter. The case shall thereupon be placed upon the Call for hearing.

"10. Disposition of Case; Orders. The court may disbar, suspend, censure or reprimand the respondent and take such other action as shall by the court be deemed appropriate.

"11. Motions for Rehearing; Time of Filing. Either relator or respondent may file a printed motion for rehearing at any time within twenty days from the filing of the opinion or rendition of the judgment of the court.

"12. Costs; Security; Taxation. No initial fee shall be required of either party, but upon motion of the respondent the court may require security for costs from any relator other than the Attorney General of the State of Nebraska or the Nebraska State Bar Association. Costs may be taxed by the court as the court shall see fit.

"13. Attorney General; Duties. The Attorney General shall prosecute in any case which shall be referred to him by the Supreme Court and shall have the right to appear and take such part in the prosecution of any action for disciplinary measures as he may think fit to take, at any stage of the proceedings.

"14. Modification of Sentence; Time of Application; Procedure. No application for modification of judgment or for reinstatement shall be made prior to the expiration of one year after the final order in such proceedings shall have been entered, except in cases where the only service upon respondent has been by publication, and no appearance has been made by respondent, and except where the application is made under the terms of sections 25–2001 to 25–2009, Reissue Revised Statutes of Nebraska, 1943. Copies of every such application shall be furnished the relator, the Attorney General, the chairman of the district Committee of Inquiry which exercised original jurisdiction and the chairman of the Advisory Committee of the Nebraska State Bar Association, any one or more of whom may appear and resist such application within 20 days thereafter. Any other persons may likewise appear upon obtaining leave of court and make such resistance. The court may overrule such an application without a hearing if justice and equity require it.

"If the application or the showing in resistance thereto shall require the taking of evidence, the matter may be referred to a referee and the proceedings shall be the same as in the case of original disciplinary proceedings.

"15. Contempt; Powers Over Attorney. These rules shall not interfere with the power of the courts of the state to punish for contempt, nor shall they deprive the courts of any other powers over attorneys which they now possess."

Section IV of those Rules contains a restatement of the Rule of the Court governing the Integration of the Bar, as modified to the operative date of the Rules. In and by Article XI of such section, a comprehensive procedure for the investigation and disposition of charges of misconduct is set up. That article is now set out in its entirety.

"1. District Committee on Inquiry; Membership; Term. The Supreme Court shall appoint a Committee of Inquiry in each district court judicial district, of not fewer than three (3) members, who shall serve for such term as shall be designated.

"2. Advisory Committee; Membership; Term. The Supreme Court shall appoint a committee to be known as the Advisory Committee, which shall consist of one member from each Supreme Court Judicial District and a chairman at large. The members of such committee

shall serve for such term as shall be designated.

"3. Initiation of Charges. All charges of unprofessional conduct on the part of any member of the Association shall be first made to the Committee of Inquiry in the district where such member resides.

"4. Committee on Inquiry; Disqualification of Members; Powers of Advisory Committee. In case any member of a Committee of Inquiry is disqualified from acting upon any matter presented to it, the same shall be referred to the Advisory Committee, and such committee shall have the power to (1) direct that the members of said Committee of Inquiry who are not disqualified shall proceed and determine such matter, or (2) direct that the matter shall be referred to some other Committee of Inquiry in which case the Committee of Inquiry to which it is so referred shall have full power and jurisdiction to the same extent and in like manner as if said matter had arisen in its district and had been originally lodged with it, or (3) take jurisdiction of and determine said matter to the same extent and with like power as the original Committee of Inquiry might have done if no disqualifications existed as to any of the members thereof.

"5. Committee on Inquiry; Informal Investigation. It shall be the duty of a Committee of Inquiry, upon having information of or upon receiving charges of unprofessional conduct on the part of a member, to make an informal and private investigation of the matter; and upon being satisfied that any such information is without foundation or that such charges are without merit, the committee shall take no further action except to dismiss the charges.

"6. Advisory Committee; Informal Investigation. In case the Committee of Inquiry shall determine that there is no reasonable ground to believe the member charged guilty of an offense which justifies disciplinary action, the person or persons making the initial charges may lodge with the Clerk of the Supreme Court an informal charge supported by affidavits or other prima facie evidence. The Clerk of the Supreme Court shall thereupon obtain from the Committee of Inquiry the written charges, statements, answer, affidavits or documents ⸱filed with it and a report of the said Committee of Inquiry, and shall refer all of such documents to the Advisory Committee for review and recommendations. If the District Committee does not make final disposition of any case within 90 days after charges are filed the District Committee shall, at the expiration of said 90 days period report in writing to the Advisory Committee stating the reason for such delay, what progress has been made in the hearing and the probable additional time necessary for final disposition, and the Advisory Committee may, if it deems it advisable, take the same action that it is authorized to take in case it finds the District Committee or some member thereof disqualified. But the District Committee having original jurisdiction shall continue to have jurisdiction over said matter until some order in the premises is made by the Advisory Committee.

"7. Committee on Inquiry; Formal Charges; Hearing; Powers; Report. If, however, a Committee of Inquiry, after making said informal and private investigation, concludes that there is reasonable ground to believe that the member against whom the charges are made is guilty of an offense which requires and justifies disciplinary action, said committee shall immediately reduce or cause the charges to be reduced to writing, specifying with particularity the facts which constitute the basis thereof, and shall serve a copy of said written charges upon the said member; and the committee shall hold a hearing upon twenty (20) days' notice to the said member

and the person making the charges, at which hearing the parties may be heard and may file with the committee any statement, answer, affidavit or document and produce other evidence. Notice of the time and place of hearing shall be given to the parties by registered mail addressed to their last known residence or place of business. The District Committee or the Chairman thereof may continue and adjourn hearing and proceedings from time to time and in cases where such orders of continuance or adjournment are made the committee or Chairman shall give notice thereof to the party making the charges and respondents by registered mail or personal notice unless such parties were present in person or by counsel when such order of continuance or adjournment was announced.

"District Committees of Inquiry and the Advisory Committee, within their respective territorial jurisdictions, are empowered to issue writs of subpoena, including subpoena duces tecum, in the name of the State of Nebraska, requiring the attendance and testimony of witnesses and parties, and the production of records, books and papers, at hearings before said committees; to administer oaths to parties and witnesses and to take their sworn testimony or their unsworn statements as the committee may decide; and to certify to this court, for appropriate action by the court, any refusal of a party or witness to comply with the requirements of a subpoena or to testify or answer questions at a hearing.

"If the committee finds that there is reasonable ground to believe the said member guilty of the misconduct charged, it shall thereupon transmit to the clerk of the Supreme Court the committee's report of investigation, a transcript containing the charges, and any statement, answer, affidavits or documents submitted and filed, and shall accompany the same with a complaint prepared, verified by any member or members of the Committee, and ready for filing in the Supreme Court. The complaint shall be made in the name of the state on the relation of the Nebraska State Bar Association.

"8. Advisory Committee; Review of Record; Report. The clerk of the Supreme Court shall thereupon refer the entire record including the report of the Committee of Inquiry, the transcript and the complaint, to the Advisory Committee for review. The Advisory Committee shall have authority to hold further hearing at which the person or persons making the initial charges and the member charged shall have a right to be heard; but the Advisory Committee may direct disposition of the charges and complaint without further hearing. If the Advisory Committee determines that no probable cause for disciplinary action exists, it shall so report to the clerk of the Supreme Court and the matter shall stand dismissed unless otherwise directed by the Supreme Court. If the Advisory Committee determines that probable cause for disciplinary action exists, it shall transmit its report, the report of the Committee of Inquiry, the transcript, and the complaint submitted by the Committee of Inquiry, together with such amendments thereto as to it may seem proper, to the clerk of the Supreme Court who shall forthwith enter the same upon the docket of the court as an original action.

"9. Hearings, Records and Proceedings; no Publicity. Unless requested by the member charged neither the hearings, records or proceedings of the Committee of Inquiry or of the Advisory Committee shall be made public, nor shall any publicity be given thereto prior to the filing of a complaint in the office of the clerk of the Supreme Court.

"10. Supreme Court; Filing of Complaint; Conditions Precedent. No complaint in any case shall be filed with the Supreme Court until charges shall have first been presented to the Committee of Inquiry and considered by the Advisory Committee as herein provided.

"11. Supreme Court; Prosecution of Proceedings; Additional Charges. Upon the filing in the Supreme Court of a complaint for disciplinary action as contemplated and provided by this Article against a member of the Association, the Supreme Court in its discretion may either designate the Attorney General or appoint any attorney of the court to prosecute the action. The Attorney General or attorney so appointed may in his discretion prepare and file an amended or new complaint, and in case he has in his possession evidence which in his opinion warrants disciplinary action on any additional charge or charges, he may incorporate such additional charge or charges in the complaint and prosecute same regardless of the fact that such new charge or charges have not been presented to the Committee of Inquiry or considered by the Advisory Committee.

"12. Expenses of Hearings. Actual expenses incurred by the District or Advisory Committees in connection with hearings prior to the filing of a complaint in the Supreme Court shall be borne by the Association.

"13. Advisory Committee; Promulgation of Rules of Practice and Procedure. In addition to the duties heretofore imposed upon the Advisory Committee, the said Committee shall confer and advise with the Committees of Inquiry, and shall promulgate uniform rules of practice and procedure for the hearing and disposition of charges before such committees. The Advisory Committee is further empowered in its discretion at the request of any member of the Association, to express its advisory opinion or give its interpretation upon rules of professional conduct where such question has not been previously determined and is not pending in any proceeding for a determination thereof.

"14. Provisions Cumulative. The provisions of this Article shall be cumulative and not exclusive."

From and since the action of the Supreme Court of Nebraska, directing the integration of the bar of the state, disciplinary proceedings resulting in reported opinions of that court have been instituted against attorneys of the bar as immediately hereinafter identified, the identification of the reported opinion, the year of the judgment, and the nature of the judgment in respect of each accused attorney being set out next after his name:

| Respondent Attorney | Opinion at | Year of Judgment | Nature of Judgment |
| --- | --- | --- | --- |
| Edward L. Hyde | 138 Neb. 541, 293 N.W. 408 | 1940 | Disbarment |
| James W. McGan | 138 Neb. 665, 294 N.W. 430 | 1940 | Disbarment |
| Clarence H. Hendrickson | 138 Neb. 846, 295 N.W. 892 | 1941 | Disbarment |
| Lee Basye | 138 Neb. 806, 295 N.W. 816 | 1941 | Disbarment |
| I. C. Bachelor | 139 Neb. 253, 297 N.W. 138 | 1941 | Discipline Denied |

| Respondent Attorney | Opinion at | Year of Judgment | Nature of Judgment |
|---|---|---|---|
| Clifford L. Rein | 141 Neb. 758, 4 N.W.2d 829 | 1942 | Disbarment |
| George H. Merten | 142 Neb. 780, 7 N.W.2d 874 | 1943 | Disbarment |
| Hubert J. Price | 144 Neb. 542, 13 N.W.2d 714 | 1944 | Discipline Denied |
| Elmer Gudmundsen | 145 Neb. 324, 16 N.W.2d 474 | 1944 | Disbarment |
| Oscar E. Nelson | 147 Neb. 131, 22 N.W.2d 425 | 1946 | Suspension |
| William Niklaus | 149 Neb. 859, 33 N.W.2d 145 | 1948 | Disbarment |
| George W. Wiebusch | 153 Neb. 583, 45 N.W.2d 583 | 1951 | Disbarment |
| H. J. Pinkett | 157 Neb. 509, 60 N.W.2d 641 | 1953 | Discipline Denied |
| Lester C. Hungerford | 159 Neb. 468, 67 N.W.2d 759 | 1954 | Disbarment |
| Leonard Dunker | 160 Neb. 779, 71 N.W.2d 502 | 1955 | Censure |
| Lester M. Palmer | 160 Neb. 786, 71 N.W.2d 491 | 1955 | Disbarment |
| Edward F. Feehan | 161 Neb. 9, 71 N.W.2d 518 | 1955 | Disbarment |
| Merton O. Bates | 162 Neb. 652, 77 N.W.2d 302 | 1956 | Censure |
| Everett O. Richards | 165 Neb. 80, 84 N.W.2d 136 | 1957 | Suspension |
| James J. Fitzgerald | 165 Neb. 212, 85 N.W.2d 323 | 1957 | Suspension |
| J. Cedric Conover | 166 Neb. 132, 88 N.W.2d 135 | 1958 | Disbarment |
| Thomas W. Stanosheck | 167 Neb. 192, 92 N.W.2d 194 | 1958 | Disbarment |
| Bertrand V. Tibbels | 167 Neb. 247, 92 N.W.2d 546 | 1958 | Suspension |
| Elven A. Butterfield | 169 Neb. 119, 98 N.W.2d 714 | 1959 | Suspension |
| Paul Mathew | 169 Neb. 194, 98 N.W.2d 865 | 1959 | Suspension |
| Charles A. Fisher | 170 Neb. 483, 103 N.W.2d 325 | 1960 | Suspension |
| John P. Jensen | 171 Neb. 1, 105 N.W.2d 459 | 1960 | Suspension |

*In every one of such proceedings the relator was "State of Nebraska, ex rel. Nebraska State Bar Association," and the proceeding was prosecuted by the then Attorney General of Nebraska.* In addition to those proceedings, there have also been instituted during the same period, disciplinary proceedings, *in each of* which the relator was "State of Nebraska ex rel. Nebraska State Bar Association, and the proceeding was prosecuted by the then Attorney General of Nebraska, against the following several members of the bar of the state, with the several results set next after their respective names:

| Respondent Attorney | Ultimate Result |
| --- | --- |
| Cloid J. Wilson | Reprimand. No opinion. |
| John A. Lawlor | Judgment on Pleadings. No opinion. |
| James P. Marron | Attorney General declined to continue prosecution. |
| Lein B. Jacobson | Respondent not served. |
| Charles B. Morearty | Judgment on pleadings, no opinion. |
| Peter Joseph Kerrigan | Judgment on pleadings, no opinion. |
| Albert Pike II | Judgment on pleadings, no opinion. |
| Alfred A. Raneri | Judgment on pleadings, no opinion. |
| Clarence M. Miller | Judgment on pleadings, no opinion. |

---

Moreover, during the interval in question, no disciplinary proceeding was instituted in any other manner, or by any other relator than as indicated in this paragraph, or prosecuted other than by the Attorney General of Nebraska. And the proceeding against William Niklaus resulting in the ruling announced in State of Nebraska ex rel. Nebraska State Bar Association v. Niklaus, 149 Neb. 859, 33 N.W.2d 145, supra, was and is the proceeding first complained of by the plaintiff in his complaint herein. In that proceeding the plaintiff herein was proceeded against in like manner as was every other member of the bar of Nebraska who, during such period of time, was subjected to disciplinary proceedings.

The foregoing extended reflection of the pleadings, and the recollection of readily identifiable related historical features, both legal and factual, have been prepared and are offered in an effort to arrive at an understanding, both of the thrust of the plaintiff's complaint, and of the demonstrable setting in which his alleged experiences certainly were encountered. Their restatement, admittedly very long, may be justified, I believe, out of regard for the circumstance that this memorandum is being prepared for the files in the instant case, for the information of the plaintiff and of counsel for the defendants, and without any present intention that it be reported or otherwise published. That restatement may also serve somewhat to simplify and abbre-

viate the announcement of this court's ruling upon the motions before it, and of the several bases for that ruling. And I now proceed to that ruling and its announcement, considering the several grounds assigned in support of the motions in the inverse sequence of their assertion in those pleadings.

Proceeding in that order, I encounter, first, the issue of the immunity from civil liability of the several moving defendants for the acts attributed to them respectively in and by the complaint. And entitled to the earlier consideration is that issue, insofar as it is tendered by the defendants Robert G. Simmons, the Chief Justice, and Edward F. Carter, Frederick W. Messmore, John W. Yeager, Elwood B. Chappell, Adolph E. Wenke and Paul E. Boslaugh, now or formerly the Associate Justices, and George H. Turner, the clerk, of the Supreme Court of Nebraska. In the complaint, those defendants are charged with allegedly wrongful acts injurious to the plaintiff, by them committed in the course of the exercise of their offices, and the performance of their duties, as members, or as clerk, of the State's Supreme Court.

■ The amended and supplemental complaint before the court is plainly aimed at all of the Justices of the highest court of Nebraska, a court of record possessing indubitable jurisdiction over the subject matter of the several items of litigation in which it is alleged to have acted, and seeks to hold them liable in damages for acts by them done in the exercise of their judicial offices in matters over which the jurisdiction is by law committed to their court. The law is settled that recovery may not be had in such circumstances; and that is true though the acts of the Justices be erroneous, irregular, illegal, or even corrupt, to borrow the language of Chief Judge Phillips in Brictson v. Woodrough, 8 Cir., 164 F.2d 107. See also Bradley v. Fisher, .13 Wall. 335, 80 U.S. 335, 20 L. Ed. 646, and Francis v. Crafts, 1 Cir., 203 F.2d 807. And the defendant, George H. Turner, as clerk of the court, whose functions are ministerial and dependent upon the action of the court by its Justices, and who is charged with the entering of its orders, is entitled to like protection. Ginsburg v. Stern, D.C.Pa. 125 F.Supp. 596; Ravenscroft v. Casey, 2 Cir., 139 F.2d 776; and Cawley v. Warren, 7 Cir., 216 F.2d 74.

■ The broad immunity of a judge— or of the Justices—of a court of record and of general jurisdiction to civil actions for damages on account of his or their judgments and doings in cases pending in such court, over which that court has jurisdiction, has long been recognized. Yates v. Lansing, 5 Johns., N.Y., 282; Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646; Brictson v. Woodrough, 8 Cir., 164 F.2d 107. As recently as December 21, 1960, it was emphatically reaffirmed by the Court of Appeals, Eighth Circuit, in Meredith v. Van Oosterhout, 8 Cir., 286 F.2d 216, 220, in which the court used this language:

"It is accordingly clear upon the face of the pleadings that the acts made the basis of the claim were privileged and no civil responsibility may be predicated thereon. It is the general rule that a judge may not be held liable civilly for his acts done in the exercise of his judicial functions no matter how illegal, erroneous or irregular the acts may be. The rule is applicable even if the acts be performed maliciously, corruptly or in excess of his jurisdiction. Sound considerations of public policy require that the judiciary be independent, with freedom to make unbiased decisions in no way controlled or influenced by fear of personal consequences, such as civil suits for imagined or even real impropriety. In so stating, however, we do not intimate even the bare possibility of there being any truth in the fantastic, baseless and grossly unjust charges made by the appellant in this case.

"The Supreme Court of the United States in Bradley v. Fisher, 1871, 13 Wall. 335 [20 L.Ed. 646], in assert-

ing the doctrine of judicial immunity from civil liability, stated [at page 347 of 13 Wall.]:

" 'The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied that we are aware of, in the courts of this country. It has, as Chancellor Kent observes, "a deep root in the common law."

" 'Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry.' 13 Wall. at page 347.

"It is true, as stated by the appellant in his brief, that the Supreme Court does point out at pages 351 and 352 that:

" '* * * A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter.'

"The court states, however, at page 352:

" '* * * But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.' "

■ With obvious present pertinence, I observe that some question has lately arisen whether this judicial immunity may be claimed where the attack on a judge or justice is made upon the score of his alleged violation of the federal civil rights statutes, and constitutional provisions relied upon in this case by the plaintiff. Thus, it was held in Picking v. Pennsylvania Railroad Company, 3 Cir., 151 F.2d 240,[18] that in such a case the immunity is to be denied. With the highest respect for the distinguished writer of that opinion, I reject it and decline to follow it. That course is required, first, because the Picking ruling is plainly wrong, and, secondly, because it is squarely in opposition to the overwhelming weight of controlling authority, including the Court of Appeals, Eighth Circuit. Without either volunteering argument of my own upon the point or quoting at length from the authorities, I now recall some of the more directly pertinent opinions. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; (in which the civil rights act was held inadequate to obviate the immunity to suit of the members of a state legislature); Tate v. Arnold, 8 Cir., 223 F.2d 782 (in which the defendant claiming the immunity was not the judge of a court of record but a justice of the peace, and the Court of Appeals explicitly rejected the Picking case as authority); Byrd v. Sexton, 8 Cir., 277 F.2d 418; Francis v. Crafts, 1 Cir., 203 F.2d 807; Ginsburg v. Stern., D.C.Pa., 125 F.Supp. 596; United States ex rel. Peters v. Carson, D.C.Pa., 126 F.Supp. 137; Souther v. Reid, D.C.Va., 101 F.Supp. 806; Morgan v. Sylvester, D.C.N.Y., 125 F.Supp. 380; Dunn v. Estes, D.C.Mass., 117 F. Supp. 146; Kenney v. Fox, D.C.Mich., 132 F.Supp. 305; Bottone v. Lindsley, 10 Cir., 170 F.2d 705; Francis v. Lyman, D.C.Mass., 108 F.Supp. 884; Griffin v. Connally, D.C.Tex., 127 F.Supp. 203; Ravenscroft v. Casey, 2 Cir., 139 F.2d 776; Dinneen v. Williams, 9 Cir., 219 F. 2d 428 (which, however, is actually decided upon another point); Cawley v. Warren, 7 Cir., 216 F.2d 74.

18. See also Cooper v. Hutchinson, 3 Cir., 184 F.2d 119, and McShane v. Moldovan, 6 ' Cir., 172 F.2d 1016.

I have clearly in view the allegations of the amended and supplemental complaint respecting the institution on or about February 18, 1952 in the District Court of Lancaster County, Nebraska, of an action by Nebraska State Bar Association against the plaintiff and his wife, and its disposition upon demurrer, confessed in open court, on or about March 8, 1952. But that apparently abortive litigation appears clearly to have been pleaded here as an historical fact supportive of the plaintiff's attack upon the validity of his earlier disbarment, and to be articulated into the allegations touching the disbarment proceeding (see paragraphs XI and XII of the amended and supplemental complaint). The heart of this litigation is the disbarment, and the later proceeding supplemental thereto in the Supreme Court of Nebraska. See paragraphs numbered XVIII and XIX and the prayer of plaintiff's amended and supplemental complaint.

■ Proceeding now to the claim to immunity from civil suit on account of the matters set out in the amended and supplemental complaint, advanced by the defendant, Clarence S. Beck. I do not consider that it is necessary or appropriate to inquire or determine whether he is entitled to immunity from civil suit for damages, protective of his every act as Deputy Attorney General, or as Attorney General, of Nebraska. He seeks such immunity only in respect of his participation in the disbarment proceeding, and the later proceeding supplemental thereto in the Supreme Court of Nebraska. At considerable length I have already recalled the "preintegration" participation in Nebraska disbarment proceedings by the state's several Attorneys General, and, more to the point, the rules of the Supreme Court of Nebraska whereunder, since the bar's integration, the Attorney General prosecutes such proceedings. His presentation of disciplinary proceedings in the Supreme

Court is made a part of his official duty as a member of the bar of the court and, for the time being, the state's chief law enforcement officer. For his ministry to the court in the performance of that duty, he is entitled to the immunity he claims, not so much on the score of his own official position, but in the way of the practical implementation of the judicial immunity already considered and determined to exist.

I consider, therefore, that all of the moving defendants are entitled to the protection of the immunity which they severally claim.

The second ground assigned by the several moving defendants for the granting of their respective motions to dismiss the amended and supplemental complaint is that such complaint in its entirety is based upon the disbarment of the plaintiff from the practice of law in the state courts of Nebraska, and that the right to practice law in the state courts of Nebraska is not within the protection of the Civil Rights Act, 42 U.S.C.A. § 1981 et seq., or any other provision, constitutional or statutory, upon which plaintiff poises his present suit.

■ That the disbarment of the plaintiff from the practice of law in Nebraska's state courts is the vital element of his present suit is inescapably true. It constitutes the basic legal step against him of which he complains, and upon which the supplemental proceedings against him rest. It is also persuasively and authoritatively established that admission to and disbarment from the· bar of a state are within the prerogatives of such state and, except for the narrow area of direct review,[19] beyond the control of the government of the United States. In re Lockwood, 154 U.S. 116, 14 S.Ct. 1082, 38 L.Ed. 929; Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342; Green v. Elbert, 8 Cir., 63 F. 308; Mitchell v. Greenough,

19. Eq. Schware v. Board of Bar Examiners of State of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796, and Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810, as explained in Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274.

9 Cir., 100 F.2d 184; Emmons v. Smitt, 6 Cir., 149 F.2d 269. Moreover, the right, once granted, to practice law in Nebraska is not a "right arising under the constitution, laws or treaties of the United States." Thus, in Green v. Elbert, 8 Cir., 63 F. 308, an action against the three justices of the Supreme Court of Colorado who had entered judgment for the disbarment of the plaintiff from the bar of Colorado, and three other men on the ground that the disbarment of plaintiff was without cause and resulted from the conspiracy of the defendants wilfully, maliciously and corruptly to oppress and harm him, the Court of Appeals, affirming the dismissal of the action for want of jurisdiction, *inter alia,* said:

> "The plaintiff derived his right to practice law in the state courts from the constitution and laws of the state, and not from the constitution and laws of the United States; and any invasion of this right through a conspiracy or otherwise was an invasion of his right as a citizen of the state, for which he must seek redress in the state courts in the absence of the requisite diverse citizenship, which alone could give the federal court jurisdiction. The enforcement act of 1870 and the Civil Rights bill of 1875 have no application to the case. * * *

> "A conspiracy to deprive a lawyer of his right to practice law in a state court is not a conspiracy to interfere with any right or privilege granted, secured, or protected by the constitution or laws of the United States. There is no act of congress conferring on the courts of the United States jurisdiction over a civil suit for damages resulting from such a conspiracy, and it would be beyond the constitutional competency of congress to pass such an act."

I hold that, beyond reasonable question, the right of a citizen of Nebraska admitted to the bar of that state, to practice law in the courts of the state, is not, in and of itself, a right arising under the constitution, laws, or treaties of the United States, or a right or privilege of a citizen of the United States. And it has to be remembered that the national civil rights legislation is not operative to transmute ordinary local private wrongs into grounds for the resort of the injured party or parties to the courts of the United States for relief.

Notice has been taken, however, of the plaintiff's inclusion in his amended and supplemental complaint of a paragraph numbered XVII, wherein he specifies and identifies "the constitutional rights, privileges, and immunities" of which the plaintiff claims he was deprived, and the four particulars therein set out have been quoted herein, supra. Each of them has had my consideration and will now be adverted to separately and briefly.

He first complains of his deprivation of "the vested right to practice law in the state of Nebraska, under license duly granted, *without due process of law."* (Emphasis added.) It has just been declared herein that the deprivation of the right to practice law within the state, standing alone, is not a deprivation of a federally guaranteed right. The averment that the deprivation was effected "without due process of law" ostensibly advances a constitutional question. But in its setting, the assertion is necessarily and completely repelled. Plaintiff cites the reported opinions of the proceedings in the Supreme Court of Nebraska, of which he complains. The one of such proceedings ending in his disbarment is State ex rel. Nebraska State Bar Association v. Niklaus, 149 Neb. 859, 33 N.W.2d 145. The unimpeached opinion reflective of the history of that proceeding discloses that the plaintiff here, respondent there, was represented in the proceeding by counsel, incidentally an able member at the time of the bar of Nebraska; that the disciplinary proceedings were filed in the Supreme Court; that the matter was referred to one Robert R. Moodie, a member of the bar, for hearing; that upon

such hearing, the referee made his report to the court; that plaintiff herein filed exceptions to such report; that the proceeding was submitted to the court, which, upon consideration, ruled against the plaintiff and entered judgment for his disbarment. That the proceeding against the plaintiff herein was conducted with "due process of law" appears to me to be unquestionable. Except perhaps for the point urged by the plaintiff in the specification appearing next hereafter, it is impossible for me to perceive any respect or particular in which he even contends that the proceeding against him lacked due process of law. And that point will shortly be considered. While the absence of due process of law from either of the other two cases against the plaintiff, of which he complains, seems not to be asserted, certainly such an assertion would be baseless. In the suit in the District Court of Lancaster County, he pleaded, made resistance, and won. And, with the assistance of counsel, he litigated State ex rel. Beck v. Niklaus, 166 Neb. 94, 87 N.W.2d 894, even to the extent of the unsuccessful quest of a writ of certiorari from the Supreme Court of the United States.

■■■■■ Secondly, plaintiff complains that he was deprived of "the immunity from suit by an unauthorized and unqualified person or entity." It is made clear that what he thereby complains of is that he was proceeded against in the disbarment proceeding under the style, "State of Nebraska ex rel. Nebraska State Bar Association, Relator v. William Niklaus, Respondent." And he contends that the Nebraska State Bar Association has no legal existence and may not, under the laws of Nebraska, appear as a party litigant in that state's courts. Hence, he reasons that the disbarment proceeding against him was a nullity, and the judgment entered in it utterly without force or effect. In this position, he is quite mistaken. Let it be remembered, supra, that in Nebraska, a proceeding for the discipline of an attorney at law is not an *action* at all, either civil or criminal. (See authorities already cited.) The

general statutes of the state relating to parties to actions are not applicable to such proceedings. The statutes of the state provide no framework whatsoever for such disciplinary proceedings. Provision for their structure is left to the state's supreme court. By its rules, supra, it has made such provisions. Doing which it has achieved a large measure of consistency with the practice in proceedings of that character antedating the rules, utilizing Nebraska State Bar Association, an obviously available and interested entity, as the relator. And in the proceeding against the present plaintiff that procedure was pursued. Furthermore, it may not be asserted validly that Nebraska State Bar Association is a nullity. In re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151. See also State ex rel. Nebraska State Bar Association v. Merten, 142 Neb. 780, 7 N.W.2d 874, 877, wherein the court said:

"In passing it will be said that by virtue of the case of In re Integration of Nebraska State Bar Ass'n, 133 Neb. 283, 275 N.W. 265, 268, 114 A.L.R. 151, the association came into being and it has continued henceforth. This legal existence cannot be properly attacked collaterally as respondent seeks to do in this action.

"One of the fundamental purposes of the integration of the bar was, through the association and its subordinate and controlled agencies, to bring to the attention of this court departures of members of the bar from the high standards of rectitude demanded in the true relationship of attorneys to courts, clients and the public generally. It is not reasonable to recognize this purpose and at the same time defeat it by denying the association power to make presentation formally of such departures.

"In the opinion in the case of In re Integration of Nebraska State Bar Ass'n, supra, it was stated:

" 'The primary duty of courts is the proper and efficient administration of justice. Attorneys are officers of

the court and the authorities holding them to be such are legion. They are in effect an important part of the judicial system of this state. It is their duty honestly and ably to aid the courts in securing an efficient administration of justice. The practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government.'

"A necessary and specific complement of this pronouncement is that the power exists in the judicial department of government to formulate and approve procedure for the bringing of lawyers to account for professional misconduct. The method of presentation herein employed is approved."

The question presented has thus had the consideration of Nebraska's highest court; and that court has answered it. I am aware of no federal constitutional principle whereunder the considered determination of a state's highest court upon a matter so definitely one of state cognizance may be overturned. I hold, therefore, that the disbarment proceeding was not in any sense a nullity. And, finally, no statute of the United States, no provision of its constitution, accords to the plaintiff the right to be sued in the courts of any state in a particular manner or style.

 Plaintiff, as his third specification, asserts his deprivation of "the equal protection of the Nebraska statutes, sections 25–313 and 28–716 R.R.S., 1943." These two sections of the statute are quoted exactly in footnotes 8 and 4 hereof respectively. How the constitution or any law of the United States provides to any one the "equal protection" of either of those sections of the statute is not disclosed by the plaintiff. To the extent that he may, under section 25–313 complain, as he seems explicitly to do in his fourth specification, *infra,* that the manner in which he was proceeded against in

the disciplinary proceeding involved discrimination against him, and thus deprivation of the equal protection of the law, it is simply observed that the answer to that contention is offered in its proper place herein. His reference to section 28–716, along with the *ad damnum* clause and prayer of the amended and supplemental complaint, discloses unmistakably that what he is really undertaking to do is to bring an action to recover upon a claim provided, if at all, not by a law of the United States but by a Nebraska statute. He may not thus proceed in this court against defendants who share his Nebraska citizenship.

Under specification 4 plaintiff is quite explicit. He states his position in this manner:

"4. Discrimination: The defendants recognized and treated all citizens of Nebraska as immune from suit by an unauthorized or unqualified artificial person or entity and, at the same time, they denied the plaintiff the right to the same immunity."

Thereby, the plaintiff again, but in another relation, assails the designation in his disciplinary proceeding of Nebraska State Bar Association as relator. Here he asserts it as discrimination against him.

 But as I have already demonstrated, the historical record of disbarment proceedings in the state is open and public, and may be judicially noticed. And that record affirmatively discloses that every attorney at law subjected to any disciplinary action since the promulgation of the rules hereinbefore cited has been proceeded against in exactly the same manner as was the plaintiff. The averment is therefore demonstrably unsupportable.

 Upon full and fair consideration of his amended and supplemental complaint, I am satisfied and conclude that the plaintiff does not aver in it his deprivation of any real right, privilege or immunity arising in his favor under the Constitution, laws or treaties of the

United States, or within the protection of its laws.

■ There remains the first assigned ground of the several motions to dismiss, namely, the failure of the amended and supplemental complaint to state a claim upon which relief can be granted as against the moving defendants or defendant, as the case may be.

It may be said very briefly and simply that I am convinced that that ground is well taken. Its merit arises, in the first place, because plaintiff has come into this court whose power to grant him relief is limited by the statutory restrictions upon its jurisdiction. To that extent the inadequacy in the pleading is jurisdictional. But also under the broader test of its statement of a claim supporting the granting of relief by any court, it is inadequate. The plaintiff's persuasion of the nullity of his disbarment proceeding, rooted in the appearance as relator therein of Nebraska State Bar Association is simply illusory. And it colors to his confusion his entire approach to that experience on his part.

Consequently, each of the several motions to dismiss must be granted and sustained. And an order must be made and given dismissing the amended and supplemental complaint, and assessing the costs herein against the plaintiff. However, although, as I have already indicated, I am convinced that the amended and supplemental complaint is vulnerable to both of the motions in their entirety and upon all of their several grounds,[20] inasmuch as I have concluded that the plaintiff has failed adequately to invoke this court's jurisdiction, the dismissal now announced is being made for want of jurisdiction. In pursuing that course, I have clearly in view certain judicial rulings which would support the entry of a general dismissal with prejudice. But in harmony with the reasoning of Hawk v. Olson, 8 Cir., 130 F.2d 910, which admittedly arose in another context. I am of the opinion that dismissal for want of jurisdiction is the more appropriate course. An order and judgment is being made and given accordingly.

Supplemental Opinion.

On April 21, 1961, this court, acting by me as judge, entered an order and judgment granting and sustaining sundry motions to dismiss, and dismissing, this action for want of jurisdiction, and assessing the costs in it against the plaintiff (filing 52). That action was taken only after the presentation to me of exhaustive typewritten briefs, and of oral arguments supportive of, and in opposition to, the motions, and after my consideration of the issues thus tendered and submitted. The order and judgment was accompanied by an extended memorandum opinion declaratory of the issues tendered and explanatory of their solution (filing 51). I now merely refer to and identify it, but in no respect repeat its contents.

On May 1, 1961, during my absence, under an assignment for judicial service in a remote district, the plaintiff served and filed a motion for the vacation of such order and judgment, and the entry of a judgment in behalf of plaintiff and against the defendants, or, alternatively, the denial and overruling of the motions to dismiss, and the direction that the action stand for trial "on the merits in the usual manner." Upon my return to this district, I have examined the files in the action and particularly the motion of the plaintiff mentioned in this paragraph.

No request for, or showing requiring, oral argument upon the motion has been made or tendered by the plaintiff, or by any defendant. Nor has the plaintiff filed a memorandum brief in support of the motion. Naturally, in the absence of such a brief in behalf of the plaintiff, no memorandum brief relating to the motion has been filed by any defendant.

Rule 16 of the Rules of Practice of this court, effective March 1, 1961, and there-

20. Naturally not including the defendant Clarence S. Beck's "second" motion and "third" motion, which I have considered it unnecessary and inappropriate to reach. supra.

after, deals with motions. Its subsections (e), (f) and (g) follow:

"*(e) Oral Argument:*

"(1) Oral argument may be had on written request therefor and a proper showing by any party or upon order of the court. A request for oral argument · shall be separately stated by the moving party at the conclusion of the motion or by any party by filing a separate pleading stating the request.

"(2) All motions, except those for summary judgment, for which oral argument is requested or ordered and which have been on file for five days or more next preceding a motion day, shall be called for hearing on that motion day. With the permission of the court, motions may be specially noticed for hearing on other court days.

"*(f) Submission on Briefs.* If no oral argument is requested, a motion shall be considered submitted five days after filing and shall be thereafter determined by the court upon the briefs submitted.

"*(g) Failure to File Brief.* If the moving party fails to serve a memorandum brief, the court may deem the motion abandoned and enter an order denying same; and in that event Rule 12(a)(1) of the Federal Rules of Civil Procedure shall apply. Failure of an adverse party to serve a memorandum brief shall not be considered as a confession of the motion."

The foregoing reference to Rule 12(a)(1) of the Federal Rules of Civil Procedure, 28 U.S.C.A., has no pertinence in the instant context.

 In the absence of any request in writing for oral argument upon the plaintiff's motion, or of any showing that such oral argument is reasonably required in the circumstances, oral argument is, thus, not ordinarily had unless it be formally ordered by the court. In the circumstances, I do not consider either

that such argument upon the instant motion is required, or that it would serve any practical purpose. I, therefore, regard the motion, which has been on file for more than four months, as submitted, and proceed to ruling upon it.

 In approaching such ruling, notice is first and properly taken of the initial sentence of Rule 16(g), quoted above. Administered according to its terms, it would clearly warrant the court in deeming the plaintiff's motion abandoned and entering an order denying it. But I have not proceeded, and do not proceed, upon that basis. I have undertaken rather to consider the motion upon its merits, and to rule upon it accordingly.

In its nine pages and twenty-nine numbered paragraphs, the motion advances no view, and tenders no issue, which was not squarely presented before me, and competently and exhaustively argued upon the submission of the motions to dismiss, which resulted in the order and judgment of April 21, 1961. My conclusion upon those issues was adequately expressed and reflected in the memorandum of that date. While it might now be restated, perhaps amplified, I am unable to perceive any purpose that might reasonably be expected to be served by an effort in that direction. I, therefore, simply announce that the motion is being denied and overruled.

It is in order, however, to take notice at this point of certain judicial deliverances which have been made since the date of the now challenged ruling in the present case. To the extent that the plaintiff advances, or argues for, the thesis that the Nebraska State Bar Association is a nullity, or that the integration of Nebraska's Bar was and is invalid, his position is persuasively discredited by Lathrop v. Donohue, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191. One may acknowledge an academic sympathy with the dissenting Mr. Justice Black in his querulous signification of doubt respecting precisely what was decided in the cited case. The exact basis of decision

in it is probably not made inescapably clear. But it necessarily rests upon the premise that the integration of the bar of Wisconsin, and the erection of the integrated "The State Bar of Wisconsin" by the Supreme Court of that state on January 1, 1957, under Rules and Bylaws promulgated by that court, In re Integration of the Bar, 273 Wis. 281, 77 N.W. 2d 602, in circumstances indistinguishable from like action by the Supreme Court of Nebraska on September 30, 1937, In re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151, were accomplished as a valid exercise of the authority vested in the acting court. In my view, that thrust of the prevailing opinions in the Lathrop case is also emphasized, rather than repelled or impaired, by the crisply phrased dissent of Mr. Justice Douglas, in which no other member of the court concurs. The tender of such a dissent frequently serves to highlight the advancement of the position it takes, and the consideration and rejection by the majority of the court, of that position. Parenthetically, I presume here to refer to an informed and accurate analysis of, and comment upon, the opinions in Lathrop v. Donohue, supra, which appears in Volume 43, Number 3, Journal of the American Judicature Society at pages 49 to 55, both inclusive. See also, for reasoning, at least tangentially supportive of the prevailing view in the Lathrop litigation, though in an admittedly different setting, International Association of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141, decided concurrently with Lathrop's case, and the earlier ruling in Railway Employes' Department, A.F.L. v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112.

Then, too, since this court's ruling herein, and on April 21, 1961, further judicial support has been added for the position reflected in my memorandum, that, apart from such considerations as due process and the equal protection of the laws, the "right" to practice law in Nebraska arising from admission to the state's bar is not, in and of itself, a right whose existence and persistence are guaranteed by the Civil Rights Act of the United States, 42 U.S.C.A. § 1981 et seq., or a right arising under the constitution, laws or treaties of the United States. On April 24, 1961, the opinions were filed in Konigsberg v. State Bar of California and the Committee of Bar Examiners of the State of California, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105; In re Anastaplo, 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135; and Cohen v. Hurley, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156. Under scrutiny in each of the Konigsberg and Anastaplo cases was the denial by a state court of last resort of a citizen's application for admission to the bar of the state; while in the Cohen case (identified as arising out of the investigation described in Anonymous Nos. 6 and 7 v. Baker, 360 U.S. 287, 79 S.Ct. 1157, 3 L.Ed.2d 1234), the matter involved was the affirmance by the New York Court of Appeals of a judgment of the Appellate Division of the State's Supreme Court disbarring the petitioner from practice as an attorney. In each of the cases, the action of the state's highest tribunal was, upon direct challenge and review, affirmed. In each of them also, the state's law was recognized as the basis of the right which the petitioner claimed to have been violated, and the jurisdiction of the state's court to act was vindicated, with due reservation of the petitioner's constitutional right to due process and equal protection of the law. And in Cohen's case, that extended to the proceeding for his disbarment. Beyond citation, it is thought that none of those recent rulings needs present analysis or discussion.

An order of the court is being made and given concurrently herewith to the effect announced earlier herein.